United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 24, 2006**

Charles R. Fulbruge III
Clerk

REVISED February 22, 2007

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 03-60721
_____

JUAN LARIN-ULLOA,

Petitioner,

versus

ALBERTO GONZALES, UNITED STATES ATTORNEY GENERAL

Respondent.

_____

On Petition for Review of an Order of the Board of
Immigration Appeals

_____

Before WIENER, BARKSDALE, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge.

Juan Larin-Ulloa ("Larin"), a native and citizen of El Salvador, petitions for review of (i) the decision of the Board of Immigration Appeals ("BIA") that he is removable for having been convicted of an aggravated felony, *see* 8 U.S.C. § 1227(a)(2)(A)(iii); and (ii) the BIA's denial of his motion to reopen his appeal.

1

Because we find that the record does not establish that Larin was convicted of an aggravated felony, as that term is defined at 8 U.S.C. § 1101(a)(43), we grant Larin's petition, vacate the order of removal, and remand the case to the BIA for any further proceedings consistent with this opinion.

## I. Facts and Procedural History

Larin was admitted to the United States in 1981, and he became a lawful permanent resident in 1989. In 2000, Larin pleaded guilty to one count of aggravated battery under Kansas law. Kansas' aggravated battery statute contains multiple sections and subsections, each of which defines one or more types of conduct that violates the statute. The statute, Kan. Stat. Ann. § 21-3414, provides, in pertinent part:

> (a) Aggravated battery is:
>
> (1)(A) Intentionally causing great bodily harm to another person or disfigurement of another person; or
>
> (B) intentionally causing bodily harm to another person with a deadly weapon, or in any manner whereby great

2

bodily harm, disfigurement or death can be inflicted; or

(C) intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted;

. . . .

(b) Aggravated battery as described in subsection (a)(1)(A) is a severity level 4, person felony.  Aggravated battery as described in subsections (a)(1)(B) and (a)(1)(C) is a severity level 7, person felony. . . .

Kan. Stat. Ann. § 21-3414.  Precisely which branch of this statute provided the basis for Larin's conviction is an issue of particular importance to his petition for review.

The bill of information under which Larin originally was charged tracked the language of subsection (a)(1)(A).  It charged that Larin "unlawfully, intentionally cause[d] great bodily harm or disfigurement to another person, to wit:  Isarael Rosas; Contrary to Kansas Statutes Annotated 21-3414(a)(1)(A), Aggravated Battery, Severity Level 4,

3

Person Felony." Prior to Larin's guilty plea, however, the state amended the bill of information, by handwritten interlineation, to charge that Larin "unlawfully, intentionally in a manner whereby [illegible] could have [illegible] cause great bodily harm or disfigurement to another person, to wit: Isarael Rosas; Contrary to Kansas Statutes Annotated 21-3414(a)(1)(A), Aggravated Battery, Severity Level 7, Person Felony." Although the amended bill of information still referred to subsection (a)(1)(A) of the statute (and notwithstanding its grammatical shortcomings), the language of the amended information, as well as the corresponding amendment to the charged severity level,[2] suggests that the state intended to charge Larin with a violation of either subsection (a)(1)(B) or (a)(1)(C). Indeed, Larin's written guilty plea recited that he was pleading guilty to one count

---

[2]Under Kansas law, the severity level of a crime is used to calculate the applicable sentencing guidelines. Crimes are assigned a severity level between one and ten, with level one representing the most severe crimes and level ten representing the least severe. *See* Kan. Stat. Ann. § 21-4707.

4

of aggravated battery in violation of subsection

(a)(1)(B).

Despite the changes to the amended bill of

information, the journal entry that recorded the

judgment against Larin stated that he was convicted

under subsection (a)(1)(A).  The state court then

sentenced Larin to 24 months probation, with an

underlying suspended prison term of 12 months.

In 2002, the Immigration and Naturalization Service

("INS")[3] initiated removal proceedings against Larin.

The INS alleged that Larin was removable because his

Kansas aggravated battery conviction was a "crime of

violence" and, therefore, an "aggravated felony"[4] that

rendered Larin removable under 8 U.S.C. §

1227(a)(2)(A)(iii).  At a hearing before the

---

[3]As of March 1, 2003, the INS's administrative, service and enforcement functions were transferred to the newly created Department of Homeland Security.  *See* *Bah v. Ashcroft*, 341 F.3d 348, 350 n.1 (5th Cir. 2003).

[4]"Aggravated felony" is defined at 8 U.S.C. § 1101(a)(43).  Among the crimes defined as aggravated felonies under that section is any "crime of violence," as that term is defined at 18 U.S.C. § 16, for which the term of imprisonment is at least one year.  *See* 8 U.S.C. § 1101(a)(43)(F).

immigration judge, Larin's counsel conceded that Larin had been convicted under subsection (a)(1)(A) of the Kansas aggravated battery statute, but asserted that a conviction under that section was not a crime of violence for purposes of removal.  The immigration judge held that Larin's conviction was for a crime of violence and found that he was removable on that basis. On appeal to the BIA, Larin's new counsel argued primarily that the confused and ambiguous bill of information failed to validly charge Larin with any crime.  The BIA rejected this challenge and found that Larin's aggravated battery conviction was a crime of violence regardless of whether he was convicted under subsection (a)(1)(A) (as reflected in the journal entry recording the judgment and as Larin conceded before the immigration judge) or subsection (a)(1)(B) (as reflected by Larin's written guilty plea) of the Kansas statute.  The BIA noted that subsections (a)(1)(A) and (a)(1)(B) both contain as an element that the defendant intentionally cause the victim bodily harm, and, relying on the panel decision in *United States v.*

6

*Calderon-Pena*, 339 F.3d 320 (5th Cir. 2003), *vacated on reh'g en banc*, 362 F.3d 293 (5th Cir. 2004), held that this element of intentionally causing bodily harm was sufficient to render a conviction under either subsection a crime of violence.

After the BIA's decision, Larin moved to vacate his conviction in Kansas state court on the ground that the amended bill of information did not charge all of the elements of any subsection of the Kansas aggravated battery statute.  The Kansas court did not vacate Larin's conviction, but instead issued a judgment nunc pro tunc[5] stating that Larin's conviction actually was based on subsection (a)(1)(C) of the Kansas aggravated battery statute.

Larin then filed a motion with the BIA to reopen his appeal and terminate the proceedings against him on the ground that his conviction under subsection

_____

[5]A nunc pro tunc judgment is "[a] procedural device by which the record of a judgment is amended to accord with what the judge actually said and did, so that the record will be accurate."  Black's Law Dictionary 848 (7th ed. 1999).

(a)(1)(C) was not for a crime of violence and he was therefore not removable for having committed an aggravated felony. As noted above, aggravated battery under section 21-3414(a)(1)(C) is "intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." Kan. Stat. Ann. § 21-3414(a)(1)(C). Thus, subsection (a)(1)(C) defines two separate crimes: (1) intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon; and (2) intentionally causing physical contact with another person in any manner whereby great bodily harm, disfigurement or death can be inflicted. Larin argued that he was convicted of violating the second part of subsection (a)(1)(C) and that a conviction under that portion of the statute was not a crime of violence under 18 U.S.C. § 16.

The BIA denied Larin's motion to reopen. In its decision, the BIA apparently considered the judgment

8

nunc pro tunc as valid, but concluded that, like the

original judgment, the judgment nunc pro tunc

established that Larin was convicted of a crime of

violence.  The BIA noted that the state court's journal

entry form, on which the rendition of the judgment nunc

pro tunc was recorded, also contained a notation

regarding Larin's sentence that suggested that the

sentencing judge had been informed that the offense was

committed with a firearm.  The BIA inferred from that

notation that Larin had been convicted of violating the

first part of subsection (a)(1)(C) of the Kansas

statute.[6]  The BIA explained its decision as follows:

> [T]he judgment *nunc pro tunc* clearly
> reflects that the respondent committed
> the aggravated battery with a firearm.
> *See Matter of Sweetser*, 22 I&N Dec.
> 709 (BIA 1999) (court may look to
> conviction records when statute is

---

[6]The Kansas court's journal entry included panels
containing various notations regarding Larin's
sentence: *e.g.*, Presumptive Sentencing Range: [Mid 12
High 13 Low 11]; Presumptive Prison [blank]; Sentence
Imposed: [Probation for 24 months; Underlying Prison
Term 12 months]; Guideline Range Imposed [Mid]; Special
Rule Applicable to Sentence: [Person felony committed
with a firearm]; Postrelease Supervision Term: [12
months]; Probation to: [Community Corrections Field
Services].

divisible). Thus, the respondent's conviction falls under the part of the statute stating that "intentionally causing physical contact with another when done in a rude, insulting or angry manner with a deadly weapon." Use of a deadly weapon while intentionally causing physical contact clearly involves a substantial risk that physical force against another person may be used. Consequently, the respondent's conviction constitutes an aggravated felony as defined under section 101(a)(43)(F) of the Act and he is removable pursuant to section 237(a)(2)(A)(iii) of the Act.

Larin timely petitioned this court for judicial review of the question of law raised by the BIA's final order of removal and its denial of his motion to reopen — whether the BIA correctly determined that Larin's aggravated battery conviction was a crime of violence under 18 U.S.C. § 16, thus rendering Larin removable under 8 U.S.C. § 1227(a)(2)(A)(iii).

## II. Jurisdiction and Standard of Review

Our jurisdiction in this case is governed by 8 U.S.C. § 1252. Although section 1252(a)(2)(C) generally prohibits judicial review of "any final order

of removal against an alien who is removable by reason of having committed" certain designated criminal offenses, including an aggravated felony under 8 U.S.C. § 1101(a)(43), the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, amended section 1252(a)(2) to provide that section 1252 does not bar judicial review of "constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(2)(D). This amendment applies retroactively to cases that were already pending on the date of its enactment. *See Rodriguez-Castro v. Gonzales*, 427 F.3d 316, 319 (5th Cir. 2005). Because the question of whether Larin's aggravated battery conviction is a crime of violence is a purely legal one, we have jurisdiction to review Larin's petition. *See id.* (holding that whether an alien's conviction involves a crime of moral turpitude is a question of law).[7]

---

[7]Many of our sister circuits have similarly concluded that whether a conviction is an aggravated

11

Moreover, even if the REAL ID Act did not provide us with jurisdiction, we have long held that we have jurisdiction to determine our own jurisdiction, *i.e.*, to determine whether a conviction qualifies as an aggravated felony. *See, e.g., Omari v. Gonzales*, 419 F.3d 303, 306 (5th Cir. 2005) (citing *Lopez-Elias v. Reno*, 209 F.3d 788, 791 n.3 (5th Cir. 2000)). Finally, that Larin seeks review of the BIA's denial of a motion to reopen does not alter our jurisdictional analysis. *See Zhao v. Gonzales*, 404 F.3d 295, 302-03 (5th Cir. 2005).

Although we review the BIA's denial of a motion to reopen for abuse of discretion, a denial based on an error of law constitutes an abuse of discretion, and we review the BIA's resolution of questions of law de

---

felony is a reviewable question of law. *See Vargas v. Dep't of Homeland Sec.*, 451 F.3d 1105, 1107 (10th Cir. 2006); *Morales-Alegria v. Gonzales*, 449 F.3d 1051, 1053 (9th Cir. 2006); *Canada v. Gonzales*, 448 F.3d 560, 563 (2d Cir. 2006); *Aguiar v. Gonzales*, 438 F.3d 86, 88 (1st Cir. 2006); *Tostado v. Carlson*, 437 F.3d 706, 708 (8th Cir. 2006); *Iysheh v. Gonzales*, 437 F.3d 613, 614 (7th Cir. 2006); *Ng v. Attorney Gen. of U.S.*, 436 F.3d 392, 394-95 (3d Cir. 2006).

novo.[8]  *Alarcon-Chavez v. Gonzales*, 403 F.3d 343, 345 (5th Cir. 2005); *see also Kaweesa v. Gonzales*, 450 F.3d 62, 67-68 (1st Cir. 2006); *Sotelo v. Gonzales*, 430 F.3d 968, 970 (9th Cir. 2005).

## III.   The Effect Of The Judgment Nunc Pro Tunc

The first question we must answer is which of the two Kansas judgments — the original judgment of conviction or the judgment nunc pro tunc — is the operative judgment of conviction for determining whether Larin is subject to removal.  In denying Larin's motion to reopen, the BIA appears to have considered the judgment nunc pro tunc as the operative judgment of conviction for immigration purposes, as it addressed the merits of Larin's argument that his conviction under subsection (a)(1)(C) of the Kansas

---

[8]We owe deference to the BIA's interpretation of the Immigration and Nationality Act ("INA"), in accordance with the principles of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984), but we review de novo whether a state criminal statute constitutes an aggravated felony under the INA. *See Omari*, 419 F.3d at 306-07; *Smalley v. Ashcroft*, 354 F.3d 332, 335-36 (5th Cir. 2003).

aggravated battery statute was not for a crime of violence. We find no reason to depart from the BIA's apparent conclusion that the judgment nunc pro tunc is the operative judgment for determining whether Larin was convicted of a crime of violence.

This is not a case in which the petitioner has persuaded a state court to vacate a conviction or otherwise mitigate its severity in order to avoid the immigration consequences of the conviction. Here, it is clear that the Kansas court's judgment nunc pro tunc simply corrected an error in what was otherwise an inconsistent and self-contradictory judgment. As described above, the Kansas state court documents in this case are wholly lacking in clarity. Larin originally was charged with violating Kan. Stat. Ann. § 21-3414(a)(1)(A), a severity level four, person felony. The bill of information was later amended by hand, and the amended information contained charging language that seems to have been intended to charge petitioner with violating either subsection (a)(1)(B) or (a)(1)(C), but which does not completely match either

14

of those subsections.  The amendment also changed the

severity level of the charged offense to level seven,

which is consistent with a charge under subsection

(a)(1)(B) or (a)(1)(C), but inconsistent with a charge

under subsection (a)(1)(A).  *See id.* § 21-3414(b)

(stating that a violation of subsection (a)(1)(A) is a

severity level four offense, but that a violation of

subsection (a)(1)(B) or (a)(1)(C) is a severity level

seven offense).  Nevertheless, the amended bill of

information still referred to subsection (a)(1)(A) as

the basis for the charge.  To compound the confusion,

Larin's written plea acknowledgment recited that he had

agreed to plead guilty to a violation of subsection

(a)(1)(B).  Finally, the journal entry that recorded

the original judgment was internally inconsistent, as

it, like the amended bill of information, stated that

petitioner was convicted of violating subsection

(a)(1)(A), but also stated that the crime was a

severity level seven offense.  The only change effected

by the Kansas court's judgment nunc pro tunc was to

correct the original judgment to clarify that Larin's

conviction actually fell under subsection (a)(1)(C), rather than subsection (a)(1)(A). Under such circumstances, we find that it is appropriate to give effect to the judgment nunc pro tunc.

That the judgment nunc pro tunc was issued solely to correct an error in the original judgment, and not to amend the substance of the original judgment, is further shown by the limited circumstances under which Kansas courts are permitted to issue nunc pro tunc orders. Kansas courts have long held that the proper function of a nunc pro tunc order is to correct a clerical error or omission, so that the journal entry recording a judgment accurately reflects the judgment that was actually issued. *See State v. Lyon*, 485 P.2d 332, 334 (Kan. 1971) ("[A] court possesses inherent power to enter judgments, orders and decrees nunc pro tunc for the purpose of correcting its records, and . . . where a journal entry fails to reflect accurately the judgment which was actually rendered, it becomes the duty of the court to make it speak the truth."); *see also State v. Thomas*, 720 P.2d 1059, 1062 (Kan. 1986)

16

(noting availability of nunc pro tunc orders to correct clerical mistakes, including "typographical errors, incorrect statute numbers, [or] failure to include the statute number").  It is equally clear that Kansas courts may not use a nunc pro tunc order to alter the substance of the judgment that was actually issued. *See State v. Mebane*, 91 P.3d 1175, 1179-80 (Kan. 2004) ("[A]ny complaint regarding the Parole Board's computation of parole eligibility is not properly brought via a motion for nunc pro tunc order, the purpose of which is to correct actual clerical errors or errors arising from oversight or omission."); *State v. Vawney*, 941 P.2d 365, 368 (Kan. 1997) (finding that trial court had no jurisdiction to grant nunc pro tunc order when order "did not correct any omission or clerical error," but instead altered a properly entered sentence).  Insofar as it is clear from the record and from Kansas law that the judgment nunc pro tunc in this case simply corrected a clerical error concerning the statutory basis for Larin's conviction in the original journal entry, the BIA correctly considered the

17

judgment nunc pro tunc in connection with Larin's motion to reopen. *Cf. Garcia-Lopez v. Ashcroft*, 334 F.3d 840, 845 (9th Cir. 2003) (holding that BIA was bound by post-conviction state court order classifying conviction as a misdemeanor rather than a felony).

This court's decisions in *Renteria-Gonzalez v. INS*, 322 F.3d 804 (5th Cir. 2002), and *Moosa v. INS*, 171 F.3d 994 (5th Cir. 1999), are not to the contrary. In *Renteria-Gonzalez* and *Moosa*, we held that a conviction that is later vacated by the sentencing court remains a "conviction" for immigration purposes under 8 U.S.C. § 1101(a)(48)(A). *See Renteria-Gonzalez*, 322 F.3d at 812-14 (vacated federal conviction); *Moosa*, 171 F.3d at 1005-06 (state deferred adjudication procedure). Here, by contrast, the judgment of conviction has not been vacated, deferred or altered. Instead, the judgment nunc pro tunc was entered to make the record conform to the true judgment of the Kansas court. Accordingly, we conclude that the BIA correctly considered the judgment nunc pro tunc as the operative judgment of conviction for determining whether Larin was convicted of a crime

18

of violence.

## IV. Is Larin's Conviction Under Kan. Stat. Ann. § 21-3414(a)(1)(C) Necessarily An Aggravated Felony?

We next consider whether Larin's conviction under subsection (a)(1)(C) qualifies as an aggravated felony. To determine whether an alien's guilty plea conviction constitutes an aggravated felony for removal purposes, we apply a "categorical approach," under which we refer only to the statutory definition of the crime for which the alien was convicted (rather than attempt to reconstruct the concrete facts of the actual criminal offense) and ask whether that legislatively-defined offense necessarily fits within the INA definition of an aggravated felony. *See Omari*, 419 F.3d at 307 (citing *Lopez-Elias*, 209 F.3d at 791); *Nguyen v. Ashcroft*, 366 F.3d 386, 388 (5th Cir. 2004).

This methodology has its roots in the categorical approach adopted by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), to determine whether a prior conviction constitutes a predicate

19

offense under the sentence enhancement provisions of the Armed Career Criminal Act, 18 U.S.C. § 924(e). Among the considerations that led the *Taylor* court to conclude that a categorical approach to prior convictions was necessary were concerns about the practical difficulties and fairness problems that would arise if courts were permitted to consider the facts behind prior convictions.[9]  The Court noted that a fact-based approach to prior convictions would potentially require federal courts to relitigate a defendant's prior conviction in any case where the government alleged that the defendant's actual conduct fit the definition of a predicate offense.  *Taylor*, 495 U.S. at 601; *see also Tokatly v. Ashcroft*, 371 F.3d 613, 621 (9th Cir. 2004) (noting "fundamental principle" that

---

[9]The *Taylor* court also emphasized that the language of 18 U.S.C. § 924(e) supported a categorical approach because its sentence enhancement provisions are triggered by prior *convictions*, and not by the fact that the person has previously committed an offense. *See Taylor*, 495 U.S. at 601.  This rationale applies equally to the INA's provision concerning aggravated felonies.  *See* 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable.").

"in determining whether a prior conviction constitutes a predicate offense, we must avoid 'the enormous problems of re-litigating past convictions, especially in cases where the defendant pleads guilty and there is no record of the underlying facts'") (quoting *United States v. Castillo-Rivera*, 244 F.3d 1020, 1022 (9th Cir. 2001)). The *Taylor* court also recognized the unfairness that could result if a factual approach was applied to prior guilty plea convictions:

> [I]n cases where the defendant pleaded guilty, there is often no record of the underlying facts. Even if the Government were able to prove those facts, if a guilty plea to a lesser, nonburglary offense was the result of a plea bargain, it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty to burglary.

*Taylor*, 495 U.S. at 601-02.

The categorical approach is not absolute, however. If the statute of conviction defines multiple offenses, at least one of which does not describe an aggravated felony, we apply a modified categorical approach, under which we may also examine certain additional documents

(if contained in the record framing the guilty plea conviction) to determine whether the conviction was "necessarily" for a particular crime defined by the statute that meets the aggravated felony criterion. *See Shepard v. United States*, 544 U.S. 13, 20-21, 26 (2005); *Omari*, 419 F.3d at 308; *see also Dickson v. Ashcroft*, 346 F.3d 44, 48-49 (2d Cir. 2003) ("In reviewing a conviction under a divisible statute, the categorical approach permits reference to the record of conviction for the limited purpose of determining whether the alien's conviction was under the branch of the statute that permits removal."). In the case of guilty plea convictions under such a divisible statute, we may consider, in addition to the language of the statute, the "'charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.'" *Omari*, 419 F.3d at 308 (quoting *Shepard*, 544 U.S. at 16). The use of these documents is permitted because they are considered sufficiently conclusive and reliable to establish the

facts to which the alien actually pleaded guilty. *See*
*Shepard*, 544 U.S. at 23 (stating that evidence of facts
should be "confined to records of the convicting court
approaching the certainty of the record of
conviction"). "Documents not of that kind, including
police reports and complaint applications, may not be
considered." *Omari*, 419 F.3d at 308.

If the documents that we may consider under the
modified categorical approach are insufficient to
establish that the petitioner was necessarily convicted
of an aggravated felony, we must find that "the
government has not met its burden of proving that the
conduct for which the petitioner was convicted
constitutes a predicate offense, and the conviction may
not be used as a basis for removal." *Tokatly*, 371 F.3d
at 620; *see Omari*, 419 F.3d at 309 (same).

That a categorical approach is appropriate to
determine whether an alien's prior conviction is for a
crime of violence is confirmed by the statutory
definition of a crime of violence. 18 U.S.C. § 16
provides:

> The term "crime of violence" means ---
>
> > (a) an offense that has *as an element* the use, attempted use, or threatened use of physical force against the person or property of another, or
> >
> > (b) any other offense that is a felony and that, *by its nature*, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16 (emphasis added). As the Supreme Court noted in *Leocal v. Ashcroft*, 543 U.S. 1 (2004), "[t]his language requires us to look to the *elements* and the *nature* of the offense of conviction, rather than to the particular facts relating to petitioner's crime." *Id.* at 7 (emphasis added); *see also United States v. Chapa-Garza*, 243 F.3d 921, 924 (5th Cir. 2001) ("[T]he words 'by its nature' require us to employ a categorical approach when determining whether an offense is a crime of violence.").

As we noted earlier, Kan. Stat. Ann. § 21-3414(a)(1)(C) prohibits two, distinct types of conduct: (i) intentionally causing physical contact with another person in a rude, insulting or angry manner with a

24

deadly weapon; and (ii) intentionally causing physical contact with another person in any manner whereby great bodily harm, disfigurement or death can be inflicted. We consider each part in turn to determine whether it describes a crime of violence.

## A.    Categorical Approach

### 1.    <u>Intentional Physical Contact With A Deadly Weapon In A Rude, Insulting Or Angry Manner</u>

In its denial of Larin's motion to reopen, the BIA found that the first part of section 21-3414(a)(1)(C) was a crime of violence under 18 U.S.C. § 16(b) because intentionally causing physical contact with another person with a deadly weapon in a rude, insulting or angry manner "clearly involves a substantial risk that physical force against another person may be used."  We agree.[10]

The relevant question for determining whether a crime is categorically a crime of violence under

_____

[10]Because we find that this part of section 21-3414(a)(1)(C) is a crime of violence under section 16(b), we do not address whether it also satisfies section 16(a).

section 16(b) is whether the crime inherently involves a substantial risk that *intentional physical force* may be used in the commission of the crime. *See Leocal*, 543 U.S. at 10. While the inquiry under section 16(a) is limited to looking at the elements of the offense, section 16(b) "sweeps more broadly" to encompass those crimes that can perhaps be committed without the use of physical force, but that nevertheless always entail a substantial risk that physical force may be used. *Id.* As it is used in section 16, the term physical force "is synonymous with destructive or violent force." *United States v. Rodriguez-Guzman*, 56 F.3d 18, 20 n.8 (5th Cir. 1995); *see also Leocal*, 543 U.S. at 11 ("[Section] 16's emphasis on the use of physical force against another person . . . suggests a category of violent, active crimes . . . ."). To illustrate the intended reach of section 16(b), the *Leocal* court explained how that section applies to the crime of burglary: "A burglary would be covered under § 16(b) *not* because the offense can be committed in a generally reckless way or because someone may be injured, but

26

because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime."  *Leocal*, 543 U.S. at 10.

We have little difficulty concluding, as did the BIA, that intentional physical contact made with a deadly weapon in a rude, insulting or angry manner is a crime of violence under section 16(b).  Although the mere act of intentionally causing physical contact with a deadly weapon under these circumstances might not always involve a use of physical force (an issue we do not decide), the prohibited conduct is by its very nature provocative, and it invites a response from the victim of the offense.  One who violates this part of section 21-3414(a)(1)(C) therefore necessarily creates a substantial risk that the confrontation may escalate to physical violence, thus requiring the perpetrator to use physical force against the victim.  *See id.*  Accordingly, we find that the first part of section 21-3414(a)(1)(C) is categorically a crime of violence.

2.   <u>Intentional Physical Contact In Any Manner</u>

27

<u>Whereby Great Bodily Harm, Disfigurement Or
Death Can Be Inflicted</u>

Our next inquiry is whether the second part of
section 21-3414(a)(1)(C) also qualifies as a crime of
violence under 18 U.S.C. § 16(a) or (b).  Because the
BIA concluded that Larin was convicted under the first
part of subsection (a)(1)(C), it did not address this
issue.

The second part, or crime definition, in section
21-3414(a)(1)(C) does not require that the defendant
use physical force in order to support a conviction.
Rather, it requires only that the defendant
"intentionally caus[e] physical contact with another
person" under circumstances where "great bodily harm,
disfigurement or death" can result.  Kan. Stat. Ann. §
21-3414(a)(1)(C).  As numerous cases have recognized,
physical contact is not the equivalent of physical
force.  *See United States v. Sarmiento-Funes*, 374 F.3d
336, 339-40 (5th Cir. 2004) (finding that state statute
prohibiting non-consensual sexual intercourse did not
have force as an element; applying United States

28

Sentencing Guidelines § 2L1.2); *United States v. Velazquez-Overa*, 100 F.3d 408, 420 (5th Cir. 1996) (stating that crime of indecent sexual contact with a child did not have use of force as an element; applying U.S.S.G. § 2L1.2); *Singh v. Ashcroft*, 386 F.3d 1228, 1232-33 (9th Cir. 2004) (stating that use of force was not an element of state harassment statute prohibiting offensive physical contact); *Flores v. Ashcroft*, 350 F.3d 666, 672 (7th Cir. 2003) (discussing distinction between physical contact and physical force).

The second part of section 21-3414(a)(1)(C) also, however, contains the element that the physical contact be made in a manner "whereby great bodily harm, disfigurement or death can be inflicted." Kan. Stat. Ann. § 21-3414(a)(1)(C). This element of risk of harm to the victim certainly opens up the possibility that the intentional physical contact used to commit the offense might in some instances amount to physical force. Notably, though, section 21-3414(a)(1)(C) does not require that the defendant intend to injure or use

force on the victim[11] or that the physical contact itself be violent, harmful, offensive, or even non-consensual.[12] These deliberate omissions convince us that the second part of section 21-3414(a)(1)(C) can be violated by physical contact that does not constitute a use of physical force.

Larin posits several hypothetical scenarios that would arguably involve violations of the second part of section 21-3414(a)(1)(C), but that do not involve the use of physical force, such as a physician negligently injecting a medication to which the patient is extremely allergic. Similarly, the statute potentially could be violated by a dentist who negligently used non-sterile equipment to clean a patient's teeth. Each of these situations involves intentional physical

---

[11]*See State v. Esher*, 922 P.2d 1123, 1127 (Kan. Ct. App. 1996) (holding that section 21-3414(a)(1)(C) does not require intent to injure); *see also State v. Campbell*, 39 P.3d 97, 100 (Kan. Ct. App. 2002) (holding that battery under Kansas law is a general intent crime requiring only that the defendant intend to cause physical contact with another person).

[12]Consent is often not a defense to the crime of battery. *See* 1 Wayne R. LaFave, Substantive Criminal Law § 6.5(a) (2d ed. 2003).

contact that creates a risk of great bodily harm, but that is also not the type of violent or destructive contact that constitutes a use of physical force. As each of the foregoing examples plausibly violates the statute, we find that the use, attempted use, or threatened use of physical force is not an element of the second part of section 21-3414(a)(1)(C).

Turning to 18 U.S.C. § 16(b), we also conclude that the second part of section 21-3414(a)(1)(C) does not "by its nature, involve[] a substantial risk that physical force against the person or the property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). As we explained above, section 16(b) reaches those crimes, such as burglary of a dwelling, that inherently present a substantial risk that intentional physical force may be used during the commission of the offense. Although a crime can qualify as a crime of violence under section 16(b) even though one may imagine situations in which it is possible to commit the offense without actually using force, it can do so only if the nature of the offense

31

is such that there is a substantial risk that physical force may be used in any case of conduct that violates the statute. *See Velazquez-Overa*, 100 F.3d at 420-21 (noting that offense "cannot be a crime of violence 'by its nature' in some cases, but not others, depending on the circumstances"); *Jobson v. Ashcroft*, 326 F.3d 367, 373 (2d Cir. 2003) (holding that offense was not crime of violence under section 16(b) where statutory definition of offense inherently covered "situations that do not involve any risk that the defendant will apply force to the victim").

In this case, we conclude that the second part of section 21-3414(a)(1)(C) can be violated by conduct that does not present a substantial risk that the offender may use physical force. In fact, the examples that we discussed above, which show that a person could violate the second part of subsection (a)(1)(C) of the Kansas statute without actually using physical force against another person, also establish that a person could violate the statute without a substantial risk that physical force may be used in the commission of

the offense.  In both of the examples, the defendant is engaged in ostensibly consensual intentional physical contact that falls short of force, and the defendant does not intend to cause the victim bodily harm. Because a defendant may thus violate the statute without the intent to injure the victim or to overcome any non-consent, the offense does not inherently involve a substantial risk that the defendant may use intentional physical force during the commission of the offense.  Accordingly, we conclude that Kan. Stat. Ann. § 21-3414(a)(1)(C) is not categorically a crime of violence under 18 U.S.C. § 16(b).

**B.  Modified Categorical Approach**

Because section 21-3414(a)(1)(C) is divisible, we now apply the modified categorical approach to determine whether Larin was necessarily convicted of violating the first part of subsection (a)(1)(C) (intentional physical contact in a rude, insulting or angry manner with a deadly weapon), which is a crime of violence.  *See Shepard*, 544 U.S. at 20-21, 26 (noting

33

that the inquiry must establish that the defendant's guilty plea "necessarily admitted" all of the elements of the predicate offense); *Omari*, 419 F.3d at 309 (same).

As we have mentioned, when applying the modified categorical approach to determine whether a conviction under a divisible statute was necessarily for a predicate offense, we may examine certain documents from the record of conviction, including "the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or . . . some comparable judicial record of this information," *Shepard*, 544 U.S. at 26, but we may not look to less-conclusive documents like a complaint application or a police report. *Id.* at 21-23; *Omari*, 419 F.3d at 308.

In this case, we refer first to the amended bill of information, the charging document that formed the basis of Larin's guilty plea conviction. The amended bill of information closely tracks the *second* part of

34

subsection (a)(1)(C), as it charges that Larin "unlawfully, intentionally in a manner whereby [illegible] could have [illegible] cause great bodily harm or disfigurement to another person." Thus, the amended bill of information does not charge Larin with the elements necessary to convict him of the crime defined by the *first* part of subsection (a)(1)(C), *i.e.*, intentionally causing physical contact with another with a deadly weapon in a rude, insulting or angry manner. The BIA, however, disregarded the fact that the amended bill of information did not accuse Larin of committing a battery with a deadly weapon in a rude, insulting or angry manner. Instead, the BIA looked at the journal entry form that had been filed in the state court records and concluded that Larin had been convicted of an aggravated felony. The BIA stated that the "judgment *nunc pro tunc* clearly reflects that [Larin] committed the aggravated battery with a firearm. . . . Thus, [Larin's] conviction falls under the part of the statute stating that 'intentionally causing physical contact with another when done in a

35

rude, insulting or angry manner with a deadly weapon.'"
For the reasons discussed below, we conclude that the
BIA erred as a matter of law in at least two respects:
in considering the firearm notation on the journal
entry form and in finding that fact sufficient to
establish that Larin was necessarily convicted of an
aggravated felony.

The only evidence of the judgment nunc pro tunc in
the record is the information pertaining to that
judgment recorded on the journal entry form.  The
journal entry form contains fill-in-the-box notations
as to, inter alia, the statutory basis for Larin's
conviction, "21-3414(a)(1)(C)," and special factors
affecting the sentence, "Special Rule Applicable to
Sentence:  Person felony committed with a firearm."
The BIA concluded that, because the journal entry form
contained information indicating that a firearm was
involved in the offense, Larin was necessarily
convicted of "intentionally causing physical contact
with another person when done in a rude, insulting or
angry manner with a deadly weapon."  Kan. Stat. Ann. §

36

21-3414(a)(1)(C).

The BIA erroneously referred to the special sentencing factor notation in the Kansas journal entry form and erroneously inferred from that notation that Larin necessarily was convicted of intentionally causing contact with another in a rude, insulting or angry manner with a deadly weapon.  That sentencing factor notation is not the type of documentary evidence to which this court or the BIA may refer, under the modified categorical approach as prescribed by *Shepard*, to determine the nature of an alien's guilty plea conviction.  Unlike the charging document, the guilty plea, or the factual basis for the plea confirmed by the defendant, sentencing reasons and factors do not simply define the charge and the defendant's guilty plea, but, instead, frequently refer to facts neither alleged nor admitted in court.[13]  Thus, the cryptic

---

[13]*Cf. United States v. Bonilla-Mungia*, 422 F.3d 316, 320-21 (5th Cir.), *cert. denied*, 126 S. Ct. 819 (2005) (holding that *Shepard* does not permit court to consider factual narrative in probation officer's presentence investigation report)*; United States v. Garza-Lopez*, 410 F.3d 268, 273-74 (5th Cir.), *cert. denied*, 126 S.

reference to a firearm sentencing factor contained in the journal entry form in this case cannot be used as a basis for inferring that Larin pleaded guilty to or was convicted of causing physical contact with a deadly weapon in a rude, insulting or angry manner.[14]

We note in passing that Larin, in his written guilty plea, acknowledged that "[t]his offense involved the use of a firearm." His written guilty plea is, of course, a type of document that may be considered under

Ct. 298 (2005) (same); *Dickson v. Ashcroft*, 346 F.3d 44, 53-55 (2d Cir. 2003) (holding that BIA could not look to factual statements in presentence investigation report to determine whether alien's conviction was for crime of violence).

[14]Although the firearm notation appeared on the journal entry form with other information concerning the sentence imposed, that notation does not thereby become a part of the judgment of conviction under Kansas law. *See State v. Royse*, 845 P.2d 44, 47 (Kan. 1993) (holding that court's judgment and sentence "do not derive their effectiveness from the journal entry, or from any act of the clerk," but instead are "effective when announced"); *State v. Moses*, 607 P.2d 477, 481 (Kan. 1980) (stating that a court's "judgment is effective upon its pronouncement from the bench; the filing of a formal journal entry is but a record, evidence of what has been done"). The journal entry recording the judgment contains a litany of information about the case, in addition to a notation of the judgment actually entered. *See* Kan. Stat. Ann. § 22-3426.

the modified categorical approach authorized by *Shepard*. The BIA did not refer to this statement in reaching its conclusion, however, and, more important, this statement, by itself or in the context of the record as a whole, does not establish that Larin necessarily pleaded guilty to or was convicted of causing contact with another with a deadly weapon in a rude, insulting or angry manner. In other words, although the state elicited an admission from Larin that a firearm was somehow involved in the offense, the amended bill of information did not charge him with the elements of using a firearm to cause contact with another in a rude, insulting or angry manner,[15] and Larin did not admit to these elements in his guilty plea.

Moreover, that the offense involved a firearm is not inconsistent with a conviction under the second

---

[15] To charge an offense under Kansas law, the information must contain "a plain and concise written statement of the essential facts constituting the crime charged," although an information "drawn in the language of the statute[] shall be deemed sufficient." Kan. Stat. Ann. § 22-3201(b); *see State v. Rome*, 5 P.3d 515, 519 (Kan. 2000).

part of subsection (a)(1)(C). Although the first part of subsection (a)(1)(C) includes as an element the use of a deadly weapon and the second part does not, nothing in the statute prevents a person from being charged and convicted of violating the second part of the statute even though he committed the offense with a deadly weapon. Thus, the fact that Larin admitted that the offense involved a firearm did not operate to transform the charge or the judgment against him into a conviction for intentionally causing physical contact with a deadly weapon in a rude, insulting or angry manner. Accordingly, the record is plainly insufficient to establish that Larin was necessarily convicted under the first part of subsection (a)(1)(C).

Because the record does not show that Larin was necessarily convicted of violating the first, rather than the second, part of Kan. Stat. Ann. § 21-3414(a)(1)(C), we conclude that the record is insufficient to establish that Larin was convicted of a crime of violence for immigration purposes.

## V. Conclusion

Because we find that the record is insufficient to establish that Larin's conviction under Kan. Stat. Ann. § 21-3414(a)(1)(C) is an aggravated felony under 8 U.S.C. § 1101(a)(43), we GRANT Larin's petition for review, VACATE the order of removal, and REMAND to the BIA for any further proceedings consistent with this opinion.