# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 6, 2007

Charles R. Fulbruge III
Clerk

———

No. 06-60440

———

LUIS ARMANDO PEREZ-MUNOZ, also known as Luis A Perez

Petitioner

v.

PETER D KEISLER, Acting United States Attorney General

Respondent

———

Petition for Review of an Order of the
Board of Immigration Appeals

———

Before JOLLY, DAVIS and WIENER, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge.

Petitioner, Luis Perez-Munoz, (Perez) lodged this appeal from an order of the Bureau of Immigration Appeals (BIA) denying his motion for rehearing of an earlier order finding him removable from the country. The removal proceedings instituted against Perez charged that he was removable under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq. Specifically, he was ordered removed pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) because he had been convicted of an aggravated felony which constituted a crime of violence under 8 U.S.C. § 1101(a)(43)(F). The aggravated felony on which the removal order was based was his conviction for injury to a child under Texas Penal Code § 22.04(a)(3). The only substantial question in the case is whether the petitioner's conviction

amounted to a crime of violence and thus an aggravated felony. Based upon our consideration of the statutory language of the offense of conviction as pared down by the allegations of the charging instrument, we conclude that petitioner was convicted of a crime of violence, and we affirm the order of the BIA. We therefore lack jurisdiction as to this appeal and dismiss Perez's petition. See DeLeon-Holguin v. Ashcroft, 253 F.3d 811, 813 (5th Cir. 2001) (citing 8 U.S.C. § 1252(a)(2)(C)).

I.

Perez, a native and citizen of Mexico, was admitted to the United States as a lawful permanent resident in February 1975. In August 2005, the Department of Homeland Security (DHS) instituted removal proceedings against petitioner charging him under 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien who was removable because he had been convicted of an aggravated felony that was a crime of violence as defined in 8 U.S.C. § 1101(a)(43)(F).[1] The DHS allegation that Perez was an aggravated felon was based on his October 14, 2002 conviction of injury to a child under Texas Penal Code § 22.04(a)(3).[2] The charging instrument (a criminal information) charged that petitioner intentionally and "knowingly cause[d] bodily injury to a child who was fourteen (14) years of age or younger, by striking the said child with the hand of the said defendant." The judgment of conviction reflected that petitioner pleaded guilty to the charge alleged in the information.

---

[1] 8 U.S.C.A. § 1101(a)(43)(F) provides: "As used in this chapter — the term 'aggravated felony' means – a crime of violence (as defined in section 16 of Title 18 . . . ) for which the term of imprisonment is at least one year." 18 U.S.C.A. § 16 provides: "The term 'crime of violence' means — (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

[2] "A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child . . . bodily injury." TEX. PENAL CODE § 22.04(a)(3).

Petitioner challenged the charge of removability arguing that his conviction under Texas Penal Code § 22.04(a)(3) was not a crime of violence. The Immigration Judge (IJ) rejected petitioner's argument because the cases relied on by petitioner were distinguishable. The IJ pointed out that these cases addressed whether a § 22.04 offense is an aggravated felony but all dealt with crimes of omission. Based on the statute as pared-down by the use of the allegations of the charging instrument, the IJ ruled that petitioner's conviction under § 22.04 was for an intentional act causing bodily injury to a child, which was a violent crime and an aggravated felony. Petitioner then sought to file an application for adjustment of status, but the IJ determined that because petitioner's crime was an aggravated felony, he was ineligible to receive the INA § 212(h)[3] waiver needed before he could file the adjustment application. The IJ ordered petitioner removed to Mexico, and petitioner appealed to the BIA.

On appeal, petitioner argued that his conviction was not for an aggravated felony pursuant to 8 U.S.C.A. § 1101(a)(43)(F) and that it was not a crime of moral turpitude. The BIA agreed with the IJ and thus concluded that petitioner had been convicted of a crime of violence and an aggravated felony for purposes of § 1101(a)(43)(F) and § 16(b), and it held that the crime was one involving moral turpitude. On February 8, 2006, the BIA dismissed petitioner's appeal.

On May 17, 2006, petitioner filed a motion asking the BIA to reconsider its February 8, 2006 order. He conceded that his motion was untimely, but he asked the Board to toll the filing deadline or reissue its decision to permit him to file a timely motion to reconsider. The BIA determined that petitioner's

---

[3] INA § 212(h) is found in 8 U.S.C. § 1182. This section allows for, in certain circumstances, a waiver of inadmissibility of an alien who was rendered inadmissible by virtue of the fact that he committed a crime of moral turpitude. See § 1182(h) (referencing subsection (a)(2)(A)(i)(I)). However, **"[n]o waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony . . . ."** *Id.*

reconsideration motion was untimely, but it considered the motion sua sponte, and, after considering the merits of the motion, denied it.

While petitioner's reconsideration motion was still pending before the BIA, he filed in this Court a Notice of Petition for Review from the BIA's February 8, 2006 order dismissing his appeal. Petitioner later also filed a timely petition for review from the BIA's June 2006 order denying his reconsideration motion.

## II.

Perez did not file a timely notice of appeal from the BIA's February 8, 2006 order dismissing his appeal. Perez's motion to reconsider was not timely filed, but the BIA exercised its discretion to consider the untimely motion sua sponte and considered the merits of petitioner's argument that he had not been convicted of an aggravated felony and therefore was not removable. Because petitioner filed a timely notice of appeal with this Court from the BIA's denial of his motion for reconsideration, we review de novo the BIA's order agreeing with the IJ that Perez's conviction for the Texas offense of injury to a child was an aggravated felony rendering him removable.[4] See Omari v. Gonzales, 419 F.3d 303, 306 (5th Cir. 2005) (we review de novo whether the statute falls within the INA definition).

## III.

Perez argues that the BIA erred when it concluded that he was deportable following his conviction for the Texas crime of injury to a child, which the BIA concluded was a crime of violence. 8 U.S.C. § 1227(a)(2)(A)(iii) provides that any alien who is convicted of an aggravated felony, as defined in 8 U.S.C. § 1101(a)(43)(F), at any time after admission is deportable. 8 U.S.C. § 1227

---

[4] Perez argued for the first time in his brief to us that he had been denied due process because of the court's initial rejection of his motion to extend the time for appeal and/or for reconsideration. Petitioner now agrees that, in view of the BIA's consideration on the merits of his substantive argument that he had not been convicted of an aggravated felony, that we need not consider his due process argument.

(a)(2)(A)(iii). Section 1101(a)(43)(F) defines the term aggravated felony as a "crime of violence (as defined in section 16 of Title 18 [United States Code] but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). Therefore, in order for an offense to qualify as an aggravated felony for purposes of 8 U.S.C. § 1227(a)(2)(A)(iii), an alien first must stand convicted of the offense; second, that offense must be classified as a crime of violence; and, third, the alien must have received a sentence of imprisonment of at least one year.

Petitioner concedes that he stands convicted for purposes of the immigration laws. Petitioner also concedes that he received a sentence of more than one year for his conviction. Therefore, the issue for decision narrows to whether the offense of conviction qualifies as a crime of violence under 18 U.S.C. § 16.

The Texas Penal Code defines the crime of injury to a child stating: "[A] person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child . . . bodily injury." TEX. PENAL CODE § 22.04.

A crime of violence is defined as:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16. Both parties agree that the precise issue here is whether, based on the categorical approach, the crime to which Perez pleaded guilty is a crime of violence under subsection (b).

We start our analysis with Texas Penal Code § 22.04. Petitioner relies on United States v. Gracia-Cantu that held a conviction for the Texas offense of

injury to a child under § 22.04 not to be, by its nature, a crime of violence within the scope of § 16(b). 302 F.3d 308, 312 (5th Cir. 2002). We made it clear in Gracia-Cantu, applying the categorical approach, that because the offense of injury to a child may involve conviction for an omission rather than an intentional act, the conviction did not qualify as a crime of violence. 302 F.2d at 312. For example, withholding food from a child or withholding medical care from a child is punishable under § 22.04, yet neither, as crimes of omission, would qualify as a crime of violence. We explained that such offenses do not present a substantial likelihood that the offender will intentionally employ force against the person or property of another in order to effectuate the commission of the offense. Id. at 312–13.

However, in cases since Gracia-Cantu, we have held that it is permissible to use a charging instrument to pare down a statute to determine if a violation of part of a statute constitutes a crime of violence when the statute as a whole categorically does not. See Larin-Ulloa v. Gonzales, 462 F.3d 456, 467–68 (5th Cir. 2006); United States v. Calderon-Pena, 383 F.3d 254, 259 (5th Cir. 2004) (en banc). In Larin-Ulloa, we explained that:

> If the statute of conviction defines multiple offenses, at least one of which does not describe an aggravated felony, we apply a modified categorical approach, under which we may also examine certain additional documents . . . to determine whether the conviction was necessarily for a particular crime defined by the statute that meets the aggravated felony criterion.

Id. at 464. We then pared down a Kansas aggravated battery statute and found that one part of the statute qualified as a crime of violence. 462 F.3d at 465–67. See also Calderon-Pena, 383 F.3d at 259 (where we held that it would be permissible to pare down a statute looking to the charging papers).

We now turn to the question of whether it is permissible for us to pare down the offense of injury to a child under § 22.04 by referring to the charging

instrument in this case. Section 22.04 provides at least two ways in which the offense can be committed. First, it may be committed by one who by act causes injury to a child, and second, it may be committed by one who by omission causes injury to a child. This statute is, therefore, divisible in that it defines multiple offenses, at least one of which constitutes an aggravated felony. In this circumstance, courts are authorized to apply a modified categorical approach. See Larin-Ulloa, 462 F.3d at 464; Omari v. Gonzales, 419 F.3d at 308.

Under the modified categorical approach, which is authorized where the statute of conviction is divisible, the Court may examine a short list of documents to determine "whether the conviction was 'necessarily' for a particular crime defined by the statute that meets the aggravated felony criteria." Larin-Ulloa, 462 F.3d at 464 (citing Shepard v. United States, 544 U.S. 13, 20–21 (2005)). In Omari, we explained that where an alien has pleaded guilty to a divisible offense, the court may consider for this purpose the "charging document, written plea agreement, transcript of plea colloquy and any explicit factual finding by the trial judge to which the defendant assented." 419 F.3d at 308 (quoting Shepard, 544 U.S. at 16).

We are persuaded that the BIA followed the teachings of our cases in Calderon-Pena and Larin-Ulloa in using the charging instrument to pare down the statute of conviction to determine which of the disjunctive elements — act or omission — Perez pleaded guilty to committing. Although the factual allegation in the Bill of Information that Perez struck a child with his hand cannot be considered, the allegation can be used to determine under which disjunctive element of Texas Penal Code § 22.04(a)(3) he stands convicted. See United States v. Acuna-Cadres, 385 F.3d 875, 878-79 (5th Cir. 2004). The charging instrument makes it clear to us that Perez was charged with an intentional and knowing act rather than a passive omission. This distinguishes today's case from Gracia-Cantu in which the indictment charged the offense in

7

the language of the statute, and we were unable to say, under the categorical approach, that the offense was committed by an intentional act rather than an omission.

We now turn to the final question: whether the offense as pared down qualifies as a crime of violence under 18 U.S.C. § 16(b). See United States v. Chapa-Garza, 243 F.3d 921, 924, 927 (5th Cir. 2001). Under § 16(b), an offense is a crime of violence if it is a felony that "by its nature involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b).

Petitioner argues that, even if the offense is pared down so that we can conclude that petitioner committed the offense by intentional act, this does not necessarily mean that a substantial risk of physical force will be presented. Petitioner argues that this is true because he can advance examples of methods by which this offense could be committed by intentional act without the use of physical force. He gives as examples putting poison or other harmful substances in a child's food or drink. Therefore, petitioner argues a conviction under this pared-down offense is not by its nature a crime of violence.

In James v. United States, the Supreme Court considered whether attempted burglary is a "violent felony" under the final clause of the Armed Career Criminals Act ("ACCA"), which provides that a violent felony is one that: "otherwise involves conduct that presents a serious potential risk of physical injury to another." 127 S.Ct. at 1586, 1591 (2007) (emphasis added).[5] James argued that "it is not enough that attempted burglary 'generally' or 'in most cases' will create a risk of physical injury to others" to meet this definition. Id. at 1596–97. He argued that under the categorical approach, all cases of burglary must present a serious potential risk of physical injury to another for the crime

---

[5] This language is similar, though not identical, to the language in § 16(a) and (b).

to be considered a violent felony under this clause of the ACCA. Id. at 1597. The Court explained, however, that James's argument "misapprehends" the categorical approach. Id. "We do not view that approach as requiring that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." Id. Instead, the Court explained that:

> The proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another. One can always hypothesize unusual cases in which even a prototypically violent crime might not present a genuine risk of injury — for example, an attempted murder where the gun, unbeknownst to the shooter, had no bullets . . . or an extortion scheme where an anonymous blackmailer threatens to release embarrassing personal information about the victim unless he is mailed regular payments. In both cases, the risk of physical injury to another approaches zero. But that does not mean that the offenses . . . are categorically nonviolent.

Id. at 1597 (emphasis added). The Court concluded that James's attempted burglary conviction was a violent felony. Id. at 1597–98.

Similarly, in United States v. Thomas, the D.C. Circuit Court applied the definition of crime of violence found in U.S.S.G. § 4B1.2(a), which includes crimes that "involve[] conduct that presents a serious potential risk of physical injury to another." 361 F.3d 653, 656 (D.C. Cir. 2004). The Court explained that in determining whether the crime of escape fits within the scope of this guideline, a categorical approach is used to determine whether the conduct "expressly charged . . . by its nature presents a serious potential risk of physical injury." Id. at 657 (citing United States v. Hill, 131 F.3d 1056, 1062 (D.C. Cir. 1997)). The defendants argued that the escape offense does not fall within this clause because it can be committed without force or violence. Id. at 658. However, the Court explained:

> It is true, as defendants contend, that a person can escape without force or serious risk of injury to anyone by simply walking away from an unguarded halfway house; he may also peacefully end his offense by waiting until the coast is clear and returning of his own volition. But the same is true of the individual who commits burglary of a dwelling: he can wait until the residents are on vacation and enter the house unarmed. The same is true of the arsonist, who, with care, can avoid serious risk of physical injury to another by limiting his fires to isolated, abandoned buildings . . . . And injury can likewise be avoided by the extortionist — who can commit his crime by threatening to damage only the reputation of his victim, and who can target only the meek and the weak.

Id. at 659–60. Thus, the Court concluded that even if one can hypothesize a non-violent escape, this fact does not shield it from being a crime of violence. Id. at 660; see also United States v. Vigil, 334 F.3d 1215, 1223 (10th Cir. 2003) ("[T]he possibility that a crime may be completed without injury is irrelevant to the determination of whether it constitutes a crime of violence . . . .") (emphasis added); United States v. Franklin, 302 F.3d 722, 724 (7th Cir. 2002) ("The benchmark should be the possibility of violent confrontation, not whether one can postulate a non-confrontational hypothetical scenario.").

Therefore, we conclude that Perez's argument is without merit. Every intentional act causing injury to a child need not be violent for a violation of this part of the pared-down statute to be a crime of violence by its nature. As the Supreme Court stated in James: "[T]he proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." James, 127 S. Ct. at 1597 (emphasis added).

We are satisfied that, in the ordinary case, when the defendant is charged with causing bodily injury to a child by an intentional act, the perpetrator uses or risks the use of physical force in committing the offense. Being able to

imagine unusual ways the crime could be committed without the use of physical force does not prevent it from qualifying as a crime of violence under § 16(b).

## IV.

After paring down the Texas offense of injury to a child in § 22.04 by reference to the charging instrument, it is clear that defendant committed the offense by an intentional act rather than an omission. Although it may be possible to commit this offense by intentional act without the use of physical force (such as by placing poison in a child's food or drink), this is not the ordinary, usual way the crime is committed. The crime, when committed by an act, is usually committed with the use of some force, or at least through conduct that presents the substantial risk that force may be used. The BIA correctly found that Perez had been convicted of an aggravated felony. We, therefore, dismiss Perez's petition.

PETITION DISMISSED.