# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 9, 2010

No. 08-60786

Lyle W. Cayce
Clerk

ROSELLER OSICOS NOLOS,

Petitioner

v.

ERIC H. HOLDER, JR., U S ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals

Before JOLLY and DENNIS, Circuit Judges, and JORDAN, District Judge.[*]

PER CURIAM:

Roseller Osicos Nolos ("Nolos") petitions for review of the Board of Immigration Appeal's ("BIA") decision to uphold the immigration judge's ("IJ") order of removal and the BIA's subsequent denial of his separate motions to reconsider and to reopen. Nolos argues that he is not removable because (1) he derives United States citizenship from his parents, who he claims acquired United States citizenship by virtue of their births in the Philippine Islands ("Philippines") while the country was a United States territory, and (2) the Nevada theft conviction that forms the basis of the removal order does not

---

[*] District Judge, Southern District of Mississippi, sitting by designation.

No. 08-60786

qualify as an aggravated felony under 8 U.S.C. § 1101(a)(43)(G). For the following reasons, we DENY the petition for review.

## I.

Nolos was admitted to the United States in 1983 as a lawful permanent resident. In 2003, he pleaded guilty to a theft offense pursuant to Nevada Revised Statutes § 205.0832 (2003) in Nevada state court and received a suspended prison sentence of between 18 and 48 months. In July 2006, the Department of Homeland Security ("DHS")[1] issued an order to show cause and notice of hearing, charging that Nolos's conviction constituted an aggravated felony pursuant to 8 U.S.C. § 1101(a)(43)(G) and rendered him removable under 8 U.S.C. § 1227(a)(2)(A)(iii).

Nolos, proceeding pro se, admitted the DHS's allegations and conceded his removability. In August 2006, the IJ determined that Nolos was removable because his Nevada conviction constituted an aggravated felony under 8 U.S.C. § 1101(a)(43)(G) and ordered him removed to the Philippines. Nolos timely appealed the IJ's order to the BIA. After an initial dismissal and a subsequent grant of Nolos's motion to reopen in light of newly discovered evidence, the BIA determined that not all of the subsections of Nevada Revised Statutes § 205.0832 constituted aggravated felonies and that the judgment of conviction – the record of conviction the Government submitted to prove Nolos was convicted of a theft offense – did not specify which provision of Nevada Revised Statutes § 205.0832 Nolos was convicted of violating. As a result, it vacated its initial dismissal of Nolos's appeal and remanded the case to the IJ.

On remand, the DHS submitted the Nevada information charging Nolos with theft under Nevada Revised Statutes § 205.0832. After a review of this

---

[1] The notice was issued by the Immigration and Naturalization Services, whose services and responsibilities have since between transferred to the DHS. *See Zaidi v. Ashcroft*, 374 F.3d 357, 358 n.1 (5th Cir. 2004).

No. 08-60786

additional material, the IJ determined that Nolos was convicted under § 205.0832(1)(b); § 205.0832(1)(b) met the requirements of theft under the Immigration and Nationality Act ("INA"); and Nolos was removable as an aggravated felon.  The BIA agreed with the IJ's determination and dismissed Nolos's appeal.

Nolos filed a timely petition for review and also filed with the BIA a timely motion for reconsideration and a motion to reopen, asserting in part that he was a citizen of the United States.  After the BIA's denial of those motions, Nolos filed an additional timely petition for review of this BIA decision.

## II.

Although our review of a final order of removal is limited under 8 U.S.C. § 1252, *Marquez-Marquez v. Gonzales*, 455 F.3d 548, 553-54 (5th Cir. 2006), we have jurisdiction to consider the purely legal questions of whether Nolos is a United States citizen and whether he was convicted of an aggravated felony, *see Larin-Ulloa v. Gonzales*, 462 F.3d 456, 460-61 (5th Cir. 2006); *Alwan v. Ashcroft*, 388 F.3d 507, 510 (5th Cir. 2004).  We also have jurisdiction to review the BIA's denial of Nolos's motions to reopen and reconsider under 8 C.F.R. § 1003.2(b) and (c).  *See Kucana v. Holder*, 130 S. Ct. 827, 838-40 (2010).

While we owe deference to the BIA's interpretation of the INA under the principles of *Chevron USA, Inc. v. NRDC*, 467 U.S. 837 (1984), our review of the legal questions posed here is *de novo*.  *See Patel v. Mukasey*, 526 F.3d 800, 802 (5th Cir. 2008); *Larin-Ulloa*, 462 F.3d at 460-61; *Omari v. Gonzales*, 419 F.3d 303, 306 (5th Cir. 2005); *Alwan*, 388 F.3d at 510.

## III.

The Government argues initially that Nolos's petition should be dismissed in part on the procedural ground that he failed to comply with 8 C.F.R. § 1003.2 because he did not present an application for relief and did not raise citizenship as a defense before the IJ.  The BIA's decision, however, did not deny Nolos's

No. 08-60786

motion on the ground of noncompliance with 8 C.F.R. § 1003.2. Although the BIA noted that Nolos "could and should have raised this claim during proceedings before the [IJ]" and "failed to support his claim with any evidence or to attach an application for the relief requested," it went on to consider and reject Nolos's claim that he was a United States citizen. Against this background, we decline the Government's invitation to dismiss in part Nolos's petition on the basis of noncompliance with 8 C.F.R. § 1003.2. *Accord Lopez-Dubon v. Holder*, ___ F.3d ____, 2010 WL 2384010 (5th Cir. 2010).

## IV.

There are two sources of citizenship: birth and naturalization. *Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 394-95 (5th Cir. 2006). Nolos asserts that he derives United States citizenship from his parents, who he claims became United States citizens at birth because they were born in the Philippines when the country was a United States territory. We have not previously decided this question. However, the Second, Third and Ninth Circuits have held that birth in the Philippines at a time when the country was a territory of the United States does not constitute birth "in the United States" under the Citizenship Clause, and thus did not give rise to United States citizenship. *Lacap v. INS*, 138 F.3d 518, 518-19 (3d Cir. 1998); *Valmonte v. INS*, 136 F.3d 914, 915-21 (2d Cir. 1998); *Rabang v. INS*, 35 F.3d 1449, 1450-54 (9th Cir. 1994).[2] The courts of appeals explained that the term "United States" as it is used in the Citizenship Clause of the Fourteenth Amendment did not, without more, include "United

---

[2] The Supreme Court also observed, although without deciding the issue, that persons born in the Philippines at the time the Philippines were a territory of the United States were not United States citizens. *See Rabang v. Boyd*, 353 U.S. 427, 430-31 (1957) ("The inhabitants of the Islands acquired by the United States during the late war with Spain, not being citizens of the United States, do not possess right of free entry into the United States." (citation and quotation marks omitted)); *Barber v. Gonzales*, 347 U.S. 637, 639 n.1 (1954) (stating that although the inhabitants of the Philippines during the territorial period were "nationals" of the United States, they were not "United States citizens").

No. 08-60786

States territories simply because the territories [were] 'subject to the jurisdiction' or 'within the dominion' of the United States." *Id.* at 1453 & n.8; *see also Valmonte*, 136 F.3d at 920.  In reaching their holdings, the courts found guidance from the Supreme Court's *Insular Cases* jurisprudence on the territorial scope of the term "the United States" as used in the Citizenship Clause of the Fourteenth Amendment.  *Valmonte*, 136 F.3d at 918-19*; Rabang*, 35 F.3d at 1452.  The *Insular Cases* were a series of Supreme Court decisions that dealt with various challenges to duties on shipments from Puerto Rico to the United States mainland.  *Rabang*, 35 F.3d at 1452; *Valmonte*, 136 F.3d at 918.

In *Downes v. Bidwell*, 182 U.S. 244 (1901), one of the *Insular Cases*, "[t]he Court held that Puerto Rico was 'not a part of the United States within the revenue clauses of the Constitution.'"  *Id.* at 287.  The Court reached this conclusion by considering the territorial scope of the term "the United States" in various clauses of the Constitution. *Valmonte*, 136 F.3d at 918*; Rabang*, 35 F.3d at 1452-53 (citing *Downes*, 182 U.S. at 251).  The Court compared the revenue clause language "all duties . . . shall be uniform throughout the United States," United States Constitution, art. I, § 8, with the Thirteenth Amendment's prohibition of slavery and involuntary servitude "within the United States, *or* any place subject to their jurisdiction, " *id.* amend. XIII, § 1 (emphasis added), and that of the Citizenship Clause of the Fourteenth Amendment providing that persons "born or naturalized in the United States, *and* subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside," *id.* amend. XIV, § 1 (emphasis added).  *See Downes*, 182 U.S. at 251 (cited in *Rabang*, 35 F.3d 1452; *Valmonte*, 136 F.3d at 918).  The Court then concluded that the disjunctive "or" in the Thirteenth Amendment showed that "there may be places within the jurisdiction of the United States that are no part of the Union" to which the Thirteenth Amendment would still apply, while citizenship

5

under the Fourteenth Amendment "is not extended to persons born in any place 'subject to [the United States'] jurisdiction'" (but instead limited to those born or naturalized in the states of the Union). *Id. See Rabang*, 35 F.3d at 1452-53 (discussing *Downes*, 182 U.S. at 251); *Valmonte*, 136 F.3d at 919  (discussing *Downes*, 182 U.S. at 251).

Relying on *Downes*, the *Rabang* and *Valmonte* courts observed that "[l]ike the revenue clauses, the Citizenship Clause has an express territorial limitation which prevents its extension to every place over which the government exercises its sovereignty." *Rabang*, 35 F.3d at 1453 (citing *United States v. Verdugo-Urquidez*, 494 U.S. 259, 291 n.11 (1990) (Brennan, J., dissenting)); *see also Valmonte*, 136 F.3d at 918-19.  The courts of appeals further noted the Court's subsequent statement that "'in dealing with foreign sovereignties, the term 'United States' has a broader meaning than when used in the Constitution, and includes all territories subject to the jurisdiction of the Federal government, wherever located.'" *Rabang*, 35 F.3d at 1453 (quoting *Downes*, 182 U.S. at 263); *Valmonte*, 136 F.3d at 919 (citing *Downes*, 182 U.S. at 263).  They observed that "[i]n other words, as used in the Constitution, the term 'United States' does not include all territories subject to the jurisdiction of the United States government." *Rabang*, 35 F.3d at 1453 (citing as *see also Examining Bd. of Eng'rs, Architects and Surveyors v. Flores de Otero*, 426 U.S. 572, 588 n.19 (1976)); *Valmonte*, 136 F.3d at 919 (citing *Downes*, 182 U.S. at 263).[3]

---

[3] The *Valmonte* court found further support in *Hooven & Allison Co. v. Evatt,* 324 U.S. 652 (1945), in which the Court held that the Philippines were "not a part of the United States in the sense that they are subject to and enjoy the benefits or protection of the Constitution, as do the states which are united by and under it." *Id.* at 678 (cited in *Valmonte*, 136 F.3d at 919).  The Second Circuit also referenced *Barber*, 347 U.S. 637, and *Rabang,* 353 U.S. 427, in which the Court "observed, without deciding, that persons born in the Philippines prior to its independence in 1946 [were] not citizens of the United States." *Valmonte*, 136 F.3d at 919 (citing *Barber,* 347 U.S. at 639 n.1; *Rabang* 353 U.S. at 432 n.12).

No. 08-60786

Against this background, the *Rabang*, *Lacap* and *Valmonte* courts held that "[i]t is . . . incorrect to extend citizenship to persons living in United States territories simply because the territories are 'subject to the jurisdiction' or 'within the dominion' of the United States, because those persons are not born 'in the United States' within the meaning of the Fourteenth Amendment." *Valmonte*, 136 F.3d at 920 (citing *Rabang*, 35 F.3d at 1453); *Rabang*, 35 F.3d at 1453; *Lacap*, 138 F.3d at 519 (citing *Rabang*, 35 F.3d at 1454; *Valmonte*, 136 F.3d 914).[4]

Notwithstanding the Supreme Court authority starting with the *Insular Cases* and the persuasive precedent from three of our sister circuits, Nolos counters that *Downes*, as one of the central cases of *Rabang*, *Valmonte* and *Lacap*, should not be followed because it never defined the phrase "the United States" in the context of the Fourteenth Amendment. Relying on *United States v. Wong Kim Ark*, 169 U.S. 649 (1898), he argues that the Fourteenth Amendment codified the principles of the English common law that birth within a sovereign's territory confers citizenship. On that basis, Nolos urges that his parents acquired United States citizenship at birth because the Philippines were under the dominion and control of the United States at the time of their births. But as have the Ninth and the Second Circuits before us, *see Rabang*, 35 F.3d at 1454; *Valmonte*, 136 F.3d at 920, we decline to give *Wong Kim Ark* such an expansive interpretation. As the Second Circuit explained, the question of the territorial scope of the Citizenship Clause of the Fourteenth Amendment was not before the Court in *Wong Kim Ark*:

---

[4] Most recently, the District Court for the District of Columbia, relying on the reasoning in *Rabang*, *Valmonte* and *Lacap*, held that a Filipino Navy shipyard worker who was born in the Philippines when it was a United States territory was not a United States citizen under the Citizenship Clause. *See Licudine v. Winter*, 603 F. Supp. 2d 129, 134-35 (D.D.C. 2009).

> The issue in *Wong Kim Ark* was whether a child born to alien
> parents in the United States was a citizen under the Fourteenth
Amendment. That the child was born in San Francisco was undisputed and "it
[was therefore] unnecessary to define 'territory' rigorously or decide whether
'territory' in its broader sense (i.e. outlying land subject to the jurisdiction of this
country) meant 'in the United States' under the Citizenship Clause."

*Valmonte*, 136 F.3d at 920 (brackets in original) (quoting *Rabang*, 35 F.3d at 1454).

Against this background, we find the reasoning of our sister circuits persuasive and hold that "persons born in the Philippines during its status as a United States territory were not 'born . . . in the United States' under the Fourteenth Amendment." *Valmonte*, 136 F.3d at 920 (quoting *Rabang*, 35 F.3d at 1453). Accordingly, given that Nolos's parents did not acquire United States citizenship by virtue of their birth in the Philippines when it was a United States territory, Nolos could not have derived United States citizenship from them and is therefore removable if he is found to have been convicted of an aggravated felony.

## V.

Nolos argues next that even if he were not a United States citizen he is not removable because his conviction under Nevada Revised Statutes § 205.0832 does not qualify as an aggravated felony under 8 U.S.C. § 1101(a)(43)(G). Nolos and the Government agree that Nevada Revised Statutes § 205.0832 is divisible and describes crimes, of which only some qualify as aggravated felonies. But the Government argues that Nolos was convicted under a subsection of the statute that qualifies as an aggravated felony.

"Federal immigration law provides that any 'alien who is convicted of an *aggravated felony* at any time after admission is deportable.'" *Nijhawan v. Holder*, 129 S. Ct. 2294, 2297 (2009) (emphasis in original) (quoting 8 U.S.C. § 1227(a)(2)(A)(iii)). Section 1101(a)(43)(G) defines an aggravated felony offense

8

as including a theft offense for which the term of imprisonment is at least one year. To determine if an offense constitutes theft, we compare it to our generic definition of a theft offense, which is "a taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent." *Burke v. Mukasey*, 509 F.3d 695, 697 (5th Cir. 2007) (citations omitted) (collecting cases). To determine whether an offense qualifies as an aggravated felony, we employ a categorical approach by "look[ing] at the statute under which the alien was convicted rather than at the particular underlying facts." *Omari*, 419 F.3d at 307. However, as in the instant matter, "[i]f the statute of conviction defines multiple offenses, at least one of which does not describe an aggravated felony," we apply a modified categorical approach. *Larin-Ulloa*, 462 F.3d at 464 (citing *Shepard v. United States*, 544 U.S. 13, 20-21, 26 (2005)). The modified categorical approach allows for examination of the record of conviction to determine under which subsection of a divisible statute the individual was convicted. *Omari*, 419 F.3d at 308. For guilty plea convictions, this "may include consideration of the 'charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.'" *Id.* (quoting *Shepard*, 544 U.S. at 16).

To prove that Nolos was convicted of an aggravated felony theft offense, the Government submitted a copy of the Nevada information and judgment of conviction. After a review of the documents, the BIA determined that Nolos was convicted under Nevada Revised Statutes § 205.0832(1)(b) and that the provision qualified as an aggravated felony under 8 U.S.C. § 1101(a)(43)(G). The single-count information confirms this conclusion. It provides several examples of Nolos creating phony merchandise refunds that he would pay to his own credit card while he was employed as a salesperson at a Nordstrom's store and states

that Nolos "did then and there knowingly, feloniously, and without lawful authority, commit theft by using services or property of another person entrusted to him or placed in his possession for a limited use, having a value of $250.00, or more, lawful money of the United States, belonging to Nordstrom's," thus tracking Nevada Revised Statutes § 205.0832(1)(b). Nevada Revised Statutes § 205.0832(1)(b) in turn meets our generic definition of theft. *See Burke*, 509 F.3d at 697 ("'[T]heft offense (including receipt of stolen property)' is a taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent." (citations omitted)). This finding is also supported by the plea agreement which Nolos submitted into the record. Nolos appears to suggest that the guilty plea agreement fails to indicate the prong of the statute to which he had pleaded guilty. But it states that Nolos pleaded guilty to theft under Nevada Revised Statutes § 205.0832, "as more fully alleged in the charging document." Therefore, it incorporates by reference the more specific description of Nolos's offense in the information which tracks the language of Nevada Revised Statutes § 205.0832(1)(b).

In sum, given that Nolos's term of imprisonment was over one year, the record of conviction establishes that Nolos was convicted of a theft offense pursuant to 8 U.S.C. § 1101(a)(43)(G) and is removable as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii).

## VI.

For the foregoing reasons, we DENY Nolos's petition for review.