# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 12, 2012

Lyle W. Cayce
Clerk

No. 10-60798

JUAN PEREZ-GONZALEZ,

Petitioner

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order
of the Board of Immigration Appeals

Before JONES, Chief Judge, and STEWART and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Juan Perez-Gonzalez petitions for review of the Board of Immigration Appeals' decision that he is to be removed based on having committed an aggravated felony. Because the record does not show that the crime for which he pled guilty was an aggravated felony, we GRANT the petition for review, REVERSE, and REMAND for further proceedings.

## FACTS AND PROCEDURAL HISTORY

In 1986, a few months after his eighteenth birthday, Perez-Gonzalez pled guilty in Montana state court to sexual intercourse without consent, a felony. Mont. Code Ann. §45-5-503(1). The formal allegation was that Perez-Gonzalez "did knowingly have sexual intercourse without consent with a person of the

No. 10-60798

opposite sex, not his spouse." The trial judge accepted Perez-Gonzalez's guilty plea. Because of the facts alleged and lack of any criminal history, Perez-Gonzalez was sentenced only to probation for one year.

Two decades later, while seeking renewal of his permanent resident alien card in San Antonio, Perez-Gonzalez was told by Immigration and Customs Enforcement that he would be removed due to the 1986 conviction for what it considered to be an aggravated felony. Such an offense would make him removable. *See* 8 U.S.C. § 1227(a)(2)(A)(iii).

After receiving his notice of removal, Perez-Gonzalez appeared before an immigration judge (IJ) and argued that (1) he was not removable because he had not committed an aggravated felony, (2) even if he were an aggravated felon, the removal provision was not retroactive and therefore did not cover his conduct, and (3) he should be granted a waiver. The IJ held Perez-Gonzalez was not entitled to a waiver; the removal statute applies retroactively; and Perez-Gonzalez had pled guilty to a crime that constituted rape or sexual abuse of a minor. Both are aggravated felonies.

On appeal, the Board of Immigration Appeals (BIA) affirmed the rulings that Perez-Gonzalez was not entitled to a waiver, that the removal provision applies retroactively, and that he committed rape. It did not decide whether Perez-Gonzalez committed sexual abuse of a minor.

Perez-Gonzalez filed a timely petition for this court to review the BIA's decision. Our disposition makes it unnecessary to decide whether the removal statute applies retroactively or whether he is entitled to a waiver.

## DISCUSSION

The conclusion that the Montana crime of conviction was an aggravated felony is reviewed *de novo*. *Moncrieffe v. Holder*, 662 F.3d 387, 390 (5th Cir. 2011). To decide whether a person subject to a removal order was convicted of an aggravated felony, we start our analysis with a categorical approach. *Larin-*

2

No. 10-60798

*Ulloa v. Gonzales*, 462 F.3d 456, 463 (5th Cir. 2006). This analysis is to be applied only to the statutory definition of the crime, not to the facts of the offense as committed. *Nolos v. Holder*, 611 F.3d 279, 285 (5th Cir. 2010).

If the statute provides multiple forms of the offense, and at least one is not an aggravated felony, we use the modified categorical approach. *Id.* It allows us to consider the record of conviction to determine the statutory subsection of conviction. *Id.* When, as here, there is a guilty plea, this court may also consider the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Omari v. Gonzales*, 419 F.3d 303, 308 (5th Cir. 2005) (quoting *Shepard v. United States*, 544 U.S. 13, 16 (2005)).

In reviewing the permitted documents, we must "determine whether the conviction was 'necessarily' for a particular crime defined by the statute that meets the aggravated felony criterion." *Larin-Ulloa*, 462 F.3d at 464 (quoting *Shepard*, 544 U.S. at 20-21). If these documents do not establish that the conviction was necessarily for an aggravated felony, "the government has not met its burden of proving that the conduct for which the petitioner was convicted constitutes a predicate offense, and the conviction may not be used as a basis for removal." *Id.* (quoting *Tokalty v. Ashcroft*, 371 F.3d 613, 620-21 (9th Cir. 2004)).

### I. *"Aggravated Felony" and the Montana Sexual Crimes Statute*

The Montana statute that Perez-Gonzalez violated stated this: "A person who knowingly has sexual intercourse without consent with a person of the opposite sex commits the offense of sexual intercourse without consent." Mont. Code Ann. § 45-5-503(1).

"Sexual intercourse" was defined as:

penetration of the vulva, anus, or mouth of one person by the penis of another person, penetration of the vulva or anus of one person by

No. 10-60798

any body member of another person, or penetration of the vulva or anus of one person by any foreign instrument or object manipulated by another person for the purpose of arousing or gratifying the sexual desire of either party.

Mont. Code Ann. § 45-2-101(61).

We conclude that the statute outlawed three different non-consensual acts: penile penetration, penetration using any other body part, and mechanical penetration. Whether all of these offenses would constitute an aggravated felony under the Immigration and Nationalization Act determines whether the categorical approach will allow for removal.

Although the INA defines "aggravated felony" to include "rape," it does not define "rape." The BIA also has not defined the term. This court therefore applies the term's "commonly understood legal meaning." *Martinez v. Mukasey*, 519 F.3d 532, 540 (5th Cir. 2008). In searching for such a meaning, we do not accept the common law's definition if that definition would be "inconsistent with the statute's purpose, notably where the term's definition has evolved." *United States v. Guidry*, 456 F.3d 493, 509 (5th Cir. 2006). We look for the modern and generic definition of the crime. *Burke v. Mukasey*, 509 F.3d 695, 697 (5th Cir. 2007). The source for such a definition allows consulting such sources as the Model Penal Code, LaFave and Scott's treatise on Criminal Law, and dictionaries. *United States v. Herrera*, 647 F. 3d 172, 176 (5th Cir. 2011). As we will explain, Congress seems to have stayed close to the common-law definition despite the fact that rape crimes defined by the states have a broader reach.

At common law, "rape" meant the "unlawful sexual intercourse committed by a man with a woman not his wife through force and against her will" where there was "at least a slight penetration of the penis into the vagina." *Black's Law Dictionary* (9th ed. 2009). Implicit in this definition is that "sexual intercourse" only means penetration of the female sex organ by the male sex

4

organ. This was the meaning as understood by Congress when it passed the federal rape law. *See Oliver v. United States*, 230 F. 971, 973 (9th Cir. 1916). That understanding remained as time progressed. As the Senate Judiciary Committee explained in 1974, when it penned an exhaustive analysis of the nation's criminal laws, "current federal law does not define the offense of rape but instead relies upon its common law meaning to supply the necessary elements and definitions." 3 Criminal Code Revision Compilation 595 Criminal Justice Reform Act of 1975, a Committee Print of the Senate Judiciary Committee, 94th Congress, December 1, 1975. The narrow reach of the law meant that "such major crimes as forcible sodomy" were not prohibited. *Id.*

In 1986, Congress passed a revision of the federal criminal law. This bill had two effects particularly important in this discussion. First, it repealed the federal rape law, then codified at 18 U.S.C. § 2031, replacing it with a ban on "aggravated sexual abuse or sexual abuse." Pub. L. No. 99-646 § 87 (Nov. 10, 1986); *see* 18 U.S.C. §§ 2241; 2242. The new provision, Chapter 109A, criminalized various "sexual acts" rather than "rape." Congress defined "sexual act" as:

> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however, slight; (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus; or (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

18 U.S.C. § 2246. At the same time, Congress amended 18 U.S.C. § 1153 – the provision concerning rape or sodomy on Indian lands – by striking the Section's specific language. There was no longer any reference to "rape, involuntary sodomy, carnal knowledge of any female, not his wife, who has not attained the age of sixteen years, [and] assault with intent to commit rape." In its place was

No. 10-60798

a cross-reference to newly-minted Chapter 109A, the chapter concerning sexual abuse.

A decade later, Congress added rape to the list of  aggravated felonies. Congress had limitless possibilities when drafting the amendment.  It could have included "aggravated sexual assault," "sexual abuse," or a similar style of crime. Or, like it did with its amendment to 18 U.S.C. § 1153, it could have inserted a cross-reference to Chapter 109A.  It did none of those things.  Rather, Congress chose to add "rape."    *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 321(a)(1).

Congress's understanding of the difference between "sexual assault" and "rape"  was evident when it debated replacing the rape provision with one banning sexual abuse.   *See* S. Rep. 97-307, at 621-35 (1981).   Congress demonstrated its continued institutional knowledge of the difference between the terms by adding to the list of aggravated felonies the new term of "sexual abuse of a minor" and also the old term of  "rape."

Additionally, by the time Congress added "rape" as an aggravated felony, only 23 states still used the term.  *See In re Rodriguez*, 2005 WL 698373 (BIA Feb. 14, 2005) (listing statutes).  Of those 23, 11 remained anchored to the common law's meaning. *See id.*  The remaining dozen were split, with half using some variation of the Model Penal Code and the other half using a broad definition that included conduct outlined in the MPC as well as digital penetration. *Id.*

Surveying the landscape as it existed when Congress added rape to the list of aggravated felonies, we find only twelve percent of states considered digital penetration to be rape.  The District of Columbia and 88 percent of the states disagreed.  Although this breakdown may change as time progresses, it counsels against holding that digital penetration was commonly considered rape in 1996.

In summary, both Congress and the courts agree that the old federal rape

6

statute incorporated the common law's meaning of the term. Cognizant of rape's meaning, when Congress intended to expand the reach of the law, it used new terms such as "sexual abuse." Although the meaning of rape drifted some over time, an overwhelming majority of states did not consider digital penetration to be rape. Given all this, we hold that digital penetration is not "rape" as the term is used in 18 U.S.C. § 1101(a)(43)(A).

*II. Applying the Modified Categorical Approach*

The proper question when deciding between the categorical or modified categorical approach is whether the conduct encompassed by the elements of the offense ordinarily would be thought of as rape. *See James v. United States*, 550 U.S. 192, 208 (2007). The Montana statute has three parts, each with different elements. As we have explained, at least one of these parts does not fall within the general meaning of the term "rape" as understood in 1996.

We do not have to speculate that the digital-penetration provision is irrelevant to the charges brought by prosecutors and resolved in the courts. Rather, there is "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). On numerous occasions, the Montana Supreme Court has affirmed convictions under this statute where the defendant's conduct was digital penetration of the victim. *See, e.g., State v. Riggs*, 113 P.3d 281, 283-84 (Mont. 2005); *State v. Insua*, 84 P.3d 11, 17-18 (Mont. 2004); *see also State v. Goodenough*, 245 P.3d 14, 20 (Mont. 2010) (a person commits sexual intercourse without consent by digitally penetrating a victim).

As the plain language of the Montana statute shows, and case law confirms, Perez-Gonzalez would have violated the law if he digitally penetrated the victim. Because this conduct is not covered by § 1101(a)(43)(A), it is a realistic possibility that Perez-Gonzalez pled guilty to a crime that would not be

considered rape under federal law. We now apply the modified categorical approach to decide "whether the conviction was 'necessarily' for a particular crime defined by the statute that meets the aggravated felony criterion." *Larin-Ulloa*, 462 F.3d at 464 (citing *Shepard*, 544 U.S. at 20-21). In reaching our conclusion, we may review only certain types of documents.

In this case, only two documents meet our criteria: the charging document and the judge's order accepting Perez-Gonzalez's guilty plea.[1] The charging document claims that Perez-Gonzalez committed "sexual intercourse without consent, a felony as specified in Section 45-5-503, M.C.A." The facts, sparse as they are, allege that he "did knowingly have sexual intercourse without consent with a person of the opposite sex, not his spouse, namely, M.M." The judge's order adds little detail. It recounts how "the defendant then entered his plea of 'guilty' to the charge of sexual intercourse without consent, a felony, as specified in Section 45-5-503, M.C.A." Although the order explained that the judge questioned Perez-Gonzalez about the facts of the crime, it does not memorialize the questions or answers in writing. It is therefore impossible to know under what subsection Perez-Gonzalez pled guilty.

Perez-Gonzalez was charged and convicted of felonious sexual intercourse without consent. Perez-Gonzalez did not "necessarily" commit the aggravated felony of rape, rather than a lesser crime. Because we are not convinced that Perez-Gonzalez pled guilty to a crime that can be categorized as rape under § 1101(a)(43)(A), we GRANT the petition for review, REVERSE the BIA's decision, and REMAND to the BIA.

---

[1] The record is silent as to whether the BIA reviewed any other documents. In its decision affirming the IJ, the BIA notes that the record in this case extends beyond the charging document and the judge's order. The Board does not, however, say whether it considered the entire record. In a footnote in its brief, the government assures us that the BIA did not consider these banned documents. That was the proper decision.

No. 10-60798

EDITH H. JONES, Chief Judge, dissenting:

Although my colleague has stated the applicable law clearly and concisely, I part company with his application of the "modified categorical approach" to this case. To be precise, I believe the Information filed against the petitioner in the Montana court states exactly what crime Perez-Gonzalez committed and that the likelihood that the Montana statute is employed outside the categories of rape or child sexual abuse is minimal.

First, the Information charged Petitioner as follows:

Philip N. Carter, Deputy County Attorney of Richland County, Montana, deposes and says that on or about the 22nd day of June, 1986, at the County of Richland, State of Montana, the above named defendant committed the offense of SEXUAL INTERCOURSE WITHOUT CONSENT, a felony as specified in Section 45-5-503, M.C.A.

The facts constituting the offense are:

That on or about the 22nd day of June, 1986, and prior to the filing of this Information, one Juan Gonzalez Perez, then and there being and being then and there in the County of Richland, State of Montana, did knowingly have sexual intercourse without consent with a person of the opposite sex, not his spouse, namely, M.M.

The Information does not suggest or state "digital penetration," it states rape in the common law generic sense. That the defendant's factual conduct as charged embraced the terminology of the statute may be "sparsely" described, but it is hard to define sexual intercourse in some other way. In other words,

No. 10-60798

had the defendant committed anal or oral penetration, or even digital penetration, those acts would violate the statute and could have been used in the factual statement, but they were not. Further, the difference between the statutory provision that was violated and the facts on which the charge is predicated is clear in this Information, another indication that the factual statement speaks of rape because that is what the petitioner did.

Second, the majority cites three Montana cases to support the contention there is "a realistic probability, not a theoretical possibility" (*Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 193, 127 S. Ct. 815 822 (2007)) that Montana prosecutes sexual crimes involving digital penetration. I cordially disagree with this reasoning. Two of those Montana cases concern patterns of domestic sexual abuse of minor children, a category of offense separately listed as an aggravated felony authorizing an alien's removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). Petitioner should not receive the benefit of "lenity" inhering in the modified categorical approach when the crimes prosecuted outside the scope of rape in the Montana statute are equally fatal under the immigration laws. The remaining single conviction for digital penetration is hardly persuasive of a "realistic" possibility that Montana generally prosecutes such conduct as a felony offense. One robin does not make a spring.

Finally, felony rape is the only act to which Petitioner could have pled guilty under this statute. Courts are currently required pursuant to *Shepard* to close our eyes to the underlying facts of prior criminal conduct unless it is proved up by such official means as judgments, jury charges, transcribed plea proceedings, or charging documents.[1] I rely here on the Information, a charging document. But whether the "modified categorical approach" conforms to the

---

[1] The Supreme Court also applied the modified categorical approach in the immigration context in *Gonzalez, supra*. It cited the trend of the circuit courts in so doing. The Supreme Court was not asked in that case to consider the special purposes of the immigration statutes *vis a vis* the modified categorical approach.

10

purposes or procedures of the INA is not clear to me. Here, an affidavit of the Deputy County Attorney filed in support of the Information details the investigation in a 3 page memorandum, the substance of which is that M.M., a fourteen-year-old, was caught in a car with the petitioner while both were semi-clad. An empty condom package was found at the scene. After initially denying that she engaged in sexual intercourse with the petitioner, she admitted to the events while being taken to a hospital for physical testing. It is one thing for the law, guided by the due process clause and the rule of lenity, to give a criminal defendant the benefit of the modified categorical approach for purposes of enhanced sentencing. I question whether the immigration policy of the United States need also favor lenity for those wishing to remain here after felony rape convictions. *See generally*, *Nijhawan v. Holder*, 557 U.S. 29, ___, 129 S. Ct. 2294, 2303 (2009), ("For one thing, we have found nothing in prior law that so limits the immigration court [regarding evidence admitted under the modified categorical approach] . . . . Further, a deportation proceeding is a civil proceeding in which the Government does not have to prove its claim 'beyond a reasonable doubt.' ")

I respectfully dissent.