**AFFIRMED and Opinion Filed November 2, 2023**



**In the**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00965-CR**

**Ex Parte ZOHAIB MUHAMMAD IMRAN**

**On Appeal from the 204th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. WX22-90074-Q**

# MEMORANDUM OPINION

Before Justices Molberg, Partida-Kipness, and Carlyle
Opinion by Justice Carlyle

Zohaib Muhammad Imran appeals from the denial of his application for a writ of habeas corpus. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

Mr. Imran is a lawful resident who moved to the United States when he was four years old. In 2016, the grand jury indicted him for sexual assault under penal code section 22.011(a)(1). Two attorneys represented Mr. Imran in connection with the charges. Bilal Khaleeq primarily handled the immigration aspects of the representation, while Jake Jenkins primarily handled the criminal aspects. According to Mr. Imran, Mr. Khaleeq advised him that if he could negotiate "a plea deal for

under five years' probation," Mr. Khaleeq "would be able to work with immigration" after Mr. Imran completed that probation.

In 2017, on advice of counsel, Mr. Imran pleaded *nolo contendere* and received a sentence of four years and six months of deferred-adjudication probation. After Mr. Imran entered his plea, federal authorities charged Mr. Khaleeq with conspiring to commit marriage fraud. Mr. Khaleeq pleaded guilty to those charges in 2018 and was disbarred by the Texas Board of Disciplinary Appeals in 2019.

Approximately two years later, the State moved to adjudicate Mr. Imran's guilt on the sexual assault charge after police in Tarrant County arrested him for marijuana possession. While the State's motion was pending, Mr. Imran applied for a writ of habeas corpus under code of criminal procedure article 11.072, challenging his plea on grounds that he received ineffective assistance of counsel and that his plea was involuntary. The trial court held an evidentiary hearing, after which it issued an order denying relief along with written findings of fact and conclusions of law.

On appeal, Mr. Imran first contends the trial court erred by denying his application because his attorneys were constitutionally ineffective for failing to inform him that a *nolo contendere* plea would make deportation "presumptively mandatory." *See Padilla v. Kentucky*, 559 U.S. 356 (2010) (counsel's performance constitutionally deficient for failing to sufficiently inform criminal defendant about deportation consequences of a guilty plea).

A habeas applicant has the burden to establish entitlement to relief by a preponderance of the evidence. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). We review the habeas court's decision on the application for abuse of discretion, viewing the evidence in the light most favorable to the trial court's ruling. *Id.* When, as here, the applicant seeks relief under code of criminal procedure article 11.072, the trial court is the sole finder of fact. *Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011). Thus, we give almost total deference to factual findings supported by the record. *See id.* (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

In *Padilla*, the Supreme Court considered whether a lawful permanent-resident defendant could establish an ineffective assistance claim under *Strickland*[1] based on counsel's failure to inform him that pleading guilty to transporting "a large amount of marijuana" would make deportation "presumptively mandatory" under federal law. 559 U.S. at 359, 369. According to Mr. Padilla, his counsel told him he "did not have to worry about immigration status since he had been in the country so long." *Id.* at 359. But the relevant immigration statute stated:

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States or a foreign country relating to a controlled substance . . . , other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

8 U.S.C. § 1227(a)(2)(B)(i).

---

[1] *Strickland v. Washington*, 466 U.S. 668 (1984).

The Supreme Court acknowledged that "[i]mmigration law can be complex, and it is a legal specialty of its own." *Padilla*, 559 U.S. at 369. Thus, there will "undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain" to a criminal defense attorney. *Id.* "When the law is not succinct and straightforward, a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* "But when the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear." *Id.*

With respect to Mr. Padilla, the Supreme Court concluded his "counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute," which "specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses." *Id.* at 368. But Mr. Padilla's counsel instead "provided him false assurance that his conviction would not result in removal from this country." *Id.* Thus, according to the Court, Mr. Padilla sufficiently alleged deficient performance under *Strickland*'s first prong. *Id.* at 369.

Here, Mr. Imran likewise contends he established deficient performance because his counsel did not inform him that deportation was a "presumptively mandatory" consequence of his plea. The trial court found that Mr. Imran's attorneys advised him there could be adverse immigration consequences to his plea. And

because that finding is supported by the record, we must defer to it. *Ex parte Garcia*, 353 S.W.3d at 788. Thus, to establish a *Padilla* claim for deficient performance, Mr. Imran must show his counsel nevertheless failed to specifically inform him of a deportation consequence that was "truly clear" under law that was "succinct" and "straightforward." *Padilla*, 559 U.S. at 369. Mr. Imran has not met that burden.

We first address Mr. Imran's assertion that it was clear his plea would result in deportation because sexual assault is a crime of moral turpitude. According to Mr. Imran's habeas application, he has been a lawful permanent resident since 2002. Yet, the sexual assault to which he pleaded *nolo contendere* occurred in 2015. Thus, he did not establish he was deportable under 8 U.S.C. § 1227(a)(2)(A)(i) because his conviction for a crime of moral turpitude did not come within ten years of his admission to the United States. And because the sexual assault offense was his first and only conviction involving a crime of moral turpitude, he was not deportable under 8 U.S.C. § 1227(a)(2)(A)(ii), which requires two or more such convictions. The sexual assault conviction also did not render him deportable as "inadmissible" under 8 U.S.C. § 1182(a)(2)(A)(i)(I)–(II), as he was not inadmissible at the time of entry or status adjustment. *Id.* § 1227(a)(1)(A).[2] Because Mr. Imran has not

---

[2] Mr. Imran posits in his reply brief that "inadmissibility" could prevent him from reentering the country or have other consequences "depending on the circumstances in which [he] could come into contact with immigration authorities." But *Padilla* established a duty for criminal defense counsel to warn of "truly clear" deportation consequences; it does not require a criminal defense attorney to provide advice concerning all potential adverse immigration consequences that might result from a plea—especially those based on hypothetical circumstances such as whether the defendant might choose to leave the country and seek re-entry in the future.

established he was subject to deportation as a consequence of pleading *nolo contendere* to a crime of moral turpitude, his counsel was not deficient for failing to inform him of such a consequence.

Mr. Imran also contends it was clear his plea would result in deportation because his conviction qualified as an "aggravated felony" for purposes of 8 U.S.C. § 1227(a)(2)(A)(iii). As relevant to Mr. Imran's arguments, "aggravated felony" is defined to include "murder, rape, or sexual abuse of a minor." 8 U.S.C. § 1101(a)(43)(A). Mr. Imran contends that any "reasonably competent attorney would advise their client that 'sexual assault'" under section 22.011(a)(1) of the Texas Penal Code "is just the legal-term used in Texas for 'rape,' and that 'rape' is a deportable aggravated felony" under 8 U.S.C. § 1101(a)(43)(A). The terms "sexual assault" and "rape," however, are not necessarily synonymous. *See Sexual Assault*, BLACK'S LAW DICTIONARY (9th ed. 2009) (defining "sexual assault" to include "[o]ffensive sexual contact with another person, exclusive of rape"). Indeed, the aggravated felony statute itself distinguishes between "rape" and "sexual abuse." We therefore cannot agree with Mr. Imran's assertion that any reasonably competent defense counsel would necessarily equate "sexual assault" with "rape."

Moreover, the law governing whether a conviction for "sexual assault" under section 22.011(a)(1) qualifies as aggravated felony "rape" for federal immigration purposes is neither "succinct" nor "straightforward." *See Padilla*, 559 U.S. at 369. To analyze the issue, one must employ a "categorical approach" that considers the

statute of conviction, rather than the facts of the offense as committed, to determine whether the statutory offense necessarily meets the generic definition of the federal aggravated felony. *See Rodriguez v. Holder*, 705 F.3d 207, 210 (5th Cir. 2013). If the statute defines multiple offenses, at least one of which does not qualify as an aggravated felony, the analysis further requires a "modified categorical approach" that seeks to determine from a limited class of documents in the record "whether the guilty plea 'necessarily' fell under a particular subsection of the statute that meets the aggravated felony criterion." *Id.* at 210–11. Documents subject to consideration include the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.* at 211 (quoting *Larin-Ulloa v. Gonzales*, 462 F.3d 456, 463 (5th Cir. 2006)). "If these documents are insufficient to establish that the alien was necessarily convicted of an aggravated felony, the conviction" does not provide a basis for deportation. *Id.*

Consistent with its common law definition, the Fifth Circuit defines the generic federal offense of "rape" as "'unlawful sexual intercourse committed by a man with a woman not his wife through force and against her will' where there was 'at least a slight penetration of the penis into the vagina.'" *Perez-Gonzalez v. Holder*, 667 F.3d 622, 626 (5th Cir. 2012) (quoting BLACK'S LAW DICTIONARY (9th ed. 2009)).[3] Section 22.011(a)(1) of the penal code, however, requires neither

---

[3] Mr. Imran cites to *United States v. Canales-Bonilla*, 735 F. App'x 154, 155 (5th Cir. 2018), in which the court partially quoted the definition provided in *Perez-Gonzalez*, omitting the penetration requirement.

penetration nor force to complete an offense. *See* TEX. PENAL CODE § 22.011(a)(1)(C) ("A person commits an offense if . . . the person intentionally or knowingly . . . causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor . . . ."); *id.* § 22.011(b) (enumerating various manners and means, other than "physical force," by which an offense may be committed "without the consent of the other person"). Thus, conviction for "sexual assault" under the Texas statute does not necessarily establish "rape" under the aggravated felony statute. *See Perez-Gonzalez*. *See* 667 F.3d at 626 (defining "rape" for federal immigration purposes); *cf. Rodriguez v. Holder*, 705 F.3d 207, 213 (5th Cir. 2013) (concluding a sexual assault conviction under section 22.011 is not categorically an aggravated-felony "crime of violence" because section 22.011(b) enumerates at least some circumstances under which an offense can be committed without force or "a substantial risk of force being used").

And although Mr. Imran has not provided us with a complete record of the proceedings in his sexual assault case, we note that the indictment charged him with "intentionally and knowingly caus[ing] the contact or penetration of the FEMALE

---

But the issue in *Canales-Bonilla* was whether the defendant's conviction for spousal rape necessarily required an offense against "a woman not [the] defendant's wife"—the degree of penetration was irrelevant to that issue. *See id.* It is clear from context that the court in *Canales-Bonilla* did not intend to depart from the definition provided in *Perez-Gonzalez*, and *Canales-Bonilla* is non-precedential in any event. *See* FED. R. APP. P. 32.1(a); 5TH CIR. R. 47.5.4.

SEXUAL ORGAN of [complainant] by any means, to-wit: DEFENDANT'S SEXUAL ORGAN, without the consent of the complainant." Even if we assume it would have been appropriate to employ a modified-categorical approach here,[4] the record does not establish that Mr. Imran's conviction necessarily involved penetration or force as required to meet the generic federal definition of "rape." *See Perez-Gonzalez*, 667 F.3d at 626. Regardless, we need not decide whether Mr. Imran was in fact deportable for pleading *nolo contendere* to an aggravated felony because, at a minimum, deportability on that basis was not a "truly clear" consequence of his plea. *See Padilla*, 559 U.S. at 369.

We also reject Mr. Imran's argument that, even if deportation was not clear, his counsel was constitutionally ineffective under *Padilla* for failing to presume "sexual assault" was a deportable aggravated felony and advise him based on such a presumption. *Padilla* established a duty to inform a client of a plea's "presumptively mandatory" deportation consequences when those consequences are "truly clear" to any reasonably effective counsel reading the statute. *See Padilla*, 559 U.S. at 369. *Padilla* does not require that counsel presume deportability any time a reasonable reading of the relevant statutes might suggest a basis for deportation.

---

[4] The Fifth Circuit decided after Mr. Imran entered his plea that the modified-categorical approach does not allow a court to look to the record to determine which subsection of section 22.011(b) might apply to a sexual assault conviction for purposes of determining whether the offense qualifies as an aggravated felony, because section 22.011(b) is indivisible and addresses alternative manners and means by which an offense can be completed without the victim's consent under section 22.011(a). *See United States v. Rodriguez-Flores*, 25 F.4th 385, 389 (5th Cir. 2022).

Imposing such a duty could result—and perhaps would have resulted in this case—in erroneous advice that causes defendants to reject favorable plea offers against their best interests.

Where, as here, the deportation consequences of a plea are unclear or uncertain, *Padilla* requires only that a criminal defense attorney advise a client that their plea could result in adverse immigration consequences. *See id.* Mr. Imran's counsel did so, and his ineffective assistance claim thus fails.

Mr. Imran also contends his plea was unknowing and involuntary because his attorneys misrepresented or failed to advise him of his plea's immigration consequences. A defendant who waives his rights by entering a plea must do so voluntarily, with "'sufficient awareness of the relevant circumstances and likely consequences' such that his plea is a knowing, intelligent act." *Ex parte Barnaby*, 475 S.W.3d 316, 322 (Tex. Crim. App. 2015) (quoting *Brady v. United States*, 397 U.S. 742, (1970)).

Mr. Imran signed a written plea agreement in which the trial court admonished him of his rights and informed him that his plea "may, and under current Federal Immigration rules *is almost certain to*, result in [his] deportation, exclusion from admission to the United States, or denial of naturalization." Mr. Imran further acknowledged:

> I understand the nature of the accusation made against me, the range of punishment for such offense, and the consequences of a plea of guilty or nolo contendere. I understand that I have an absolute right to a jury

trial, that I have the right to remain silent, that anything I say can and will be used against me, that I have the right to confront and cross-examine the witness[es] against me. . . . I understand that if I am not a United States citizen, a plea of guilty or *nolo contendere* will probably result in my deportation from the United States, exclusion from admission to the United States, or denial of naturalization under Federal law.

At the evidentiary hearing on Mr. Imran's application, Mr. Imran testified that he understood the plea papers when he signed them. He further testified that he "understood that [he] may or may not be subject to deportation at the time of [his] plea." Mr. Jenkins testified that he reviewed the plea agreement with Mr. Imran and that Mr. Imran understood its terms. He also testified it was his impression that Mr. Imran decided to accept the plea in order to avoid the risk of trial and that Mr. Imran was willing to risk his immigration status. The trial court found Mr. Jenkins's testimony credible and worthy of belief, while finding that Mr. Imran's claim that he would not have entered his plea if he had known about its immigration consequences—asserted only after the State moved to revoke his probation based on a subsequent offense—was not credible. On this record, viewing the evidence in the light most favorable to the trial court's ruling, we discern no abuse of discretion in concluding that Mr. Imran knowingly and voluntarily entered his plea.

Finally, Mr. Imran contends he is entitled to a new trial because Mr. Khaleeq's "mere involvement" in the case threatens the integrity of the judicial system, violates due process, and demonstrates ineffective assistance of counsel, given his conviction for federal marriage fraud. Mr. Imran did not preserve this issue by timely raising it

in the trial court. *See* TEX. R. APP. P. 33.1(a); *Ex parte Perez*, 536 S.W.3d 877, 880 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (appellate court's habeas review limited to issues raised and decided in trial court habeas proceedings). Regardless, Mr. Imran's argument lacks merit. Mr. Khaleeq's subsequent fraud conviction in an unrelated case has little, if any, relevance to whether Mr. Imran received due process or effective assistance of counsel.

We affirm the trial court's order denying Mr. Imran's application for habeas corpus.

/Cory L. Carlyle/

CORY L. CARLYLE
JUSTICE

220965f.p05
Do Not Publish
TEX. R. APP. P. 47.2(b)



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

EX PARTE ZOHAIB
MUHAMMAD IMRAN

No. 05-22-00965-CR

On Appeal from the 204th Judicial District Court, Dallas County, Texas Trial Court Cause No. WX22-90074-Q.

–12–

Opinion delivered by Justice Carlyle. Justices Molberg and Partida-Kipness participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 2nd day of November, 2023.