**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**December 27, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

JOHN FITISEMANU; PALE TULI;
ROSAVITA TULI; SOUTHERN UTAH
PACIFIC ISLANDER COALITION,

      Plaintiffs - Appellees,

v.

UNITED STATES OF AMERICA; U.S.
DEPARTMENT OF STATE; ANTONY
BLINKEN, in his official capacity as
Secretary of the U.S. Department of State;
IAN G. BROWNLEE, in his official
capacity as Assistant Secretary of State for
Consular Affairs,

      Defendants - Appellants,

and

THE HONORABLE AUMUA AMATA;
AMERICAN SAMOA GOVERNMENT,

      Intervenor Defendants.

----------------------------

VIRGIN ISLANDS BAR ASSOCIATION;
AMERICAN CIVIL LIBERTIES UNION;
ACLU OF UTAH; LINDA S. BOSNIAK;
KRISTIN COLLINS; STELLA BURCH
ELIAS; SAM ERMAN; TORRIE
HESTER; POLLY J. PRICE; MICHAEL
RAMSEY; NATHAN PERL-
ROSENTHAL; LUCY E. SALYER;
KATHERINE R. UNTERMAN;

No. 20-4017
(D.C. No. 1:18-CV-00036-CW)
(D. Utah)

CHARLES R. VENATOR-SANTIAGO; SAMOAN FEDERATION OF AMERICA, INC.; RAFAEL COX ALOMAR; J. ANDREW KENT; GARY S. LAWSON; SANFORD V. LEVINSON; CHRISTINA DUFFY PONSA-KRAUS; STEPHEN I. VLADECK; CONGRESSWOMAN STACEY PLASKETT; CONGRESSMAN MICHAEL F.Q. SAN NICOLAS; CARL GUTIERREZ; FELIX P. CAMACHO; JUAN BABAUTA; DR. PEDRO ROSSELLO; ANIBAL ACEVEDO VILA; LUIS FORTUNO; JOHN DE JONGH; KENNETH MAPP; DONNA M. CHRISTIAN-CHRISTENSEN; AMANDA FROST; LINDA K. KERBER; D. CAROLINA NUNEZ; ROGERS M. SMITH,

     Amici Curiae.

No. 20-4019
(D.C. No. 1:18-CV-00036-CW)
(D. Utah)

_____

JOHN FITISEMANU; PALE TULI; ROSAVITA TULI; SOUTHERN UTAH PACIFIC ISLANDER COALITION,

     Plaintiffs - Appellees,

v.

UNITED STATES OF AMERICA; U.S. DEPARTMENT OF STATE; ANTONY BLINKEN, in his official capacity as Secretary of the U.S. Department of State; IAN G. BROWNLEE, in his official capacity as Assistant Secretary of State for Consular Affairs,

     Defendants,

and

2

THE HONORABLE AUMUA AMATA;
AMERICAN SAMOA GOVERNMENT,

    Intervenor Defendants - Appellants.

------------------------------

VIRGIN ISLANDS BAR ASSOCIATION;
AMERICAN CIVIL LIBERTIES UNION;
ACLU OF UTAH; LINDA S. BOSNIAK;
KRISTIN COLLINS; STELLA BURCH
ELIAS; SAM ERMAN; TORRIE
HESTER; POLLY J. PRICE; MICHAEL
RAMSEY; NATHAN PERL-
ROSENTHAL; LUCY E. SALYER;
KATHERINE R. UNTERMAN;
CHARLES R. VENATOR-SANTIAGO;
SAMOAN FEDERATION OF AMERICA,
INC.; RAFAEL COX ALOMAR; J.
ANDREW KENT; GARY S. LAWSON;
SANFORD V. LEVINSON; CHRISTINA
DUFFY PONSA-KRAUS; STEPHEN I.
VLADECK; CONGRESSWOMAN
STACEY PLASKETT; CONGRESSMAN
MICHAEL F.Q. SAN NICOLAS; CARL
GUTIERREZ; FELIX P. CAMACHO;
JUAN BABAUTA; DR. PEDRO
ROSSELLO; ANIBAL ACEVEDO VILA;
LUIS FORTUNO; JOHN DE JONGH;
KENNETH MAPP; DONNA M.
CHRISTIAN-CHRISTENSEN; AMANDA
FROST; LINDA K. KERBER; D.
CAROLINA NUNEZ; ROGERS M.
SMITH,

    Amici Curiae.

_____

**ORDER**

_____

3

Before **TYMKOVICH**, Chief Judge, **HARTZ**, **HOLMES**, **BACHARACH**, **PHILLIPS**, **MORITZ**, and **CARSON**, Circuit Judges.[*]

_____

These matters are before the court on *Plaintiffs-Appellees' Petition for Rehearing En Banc* ("Petition"). We also have responses from Defendants-Appellants and Intervenor Defendants-Appellants.

The Petition and responses were transmitted to all non-recused judges of the court who are in regular active service. A poll was called and did not carry. *See* Fed. R. App. P. 35(a) (en banc consideration requires the approval of a majority of the circuit judges who are in regular active service and who are not disqualified). Accordingly, the Petition is DENIED.

Judge Bacharach and Judge Moritz would grant rehearing en banc. Judge Bacharach has prepared the attached written dissent from the denial of rehearing en banc, which is joined by Judge Moritz.

All pending motions for leave to file amici curiae briefs are granted. The briefs attached to those motions will be shown as filed as of the date of this order.

Entered for the Court,

CHRISTOPHER M. WOLPERT, Clerk

---

[*] The Honorable Scott M. Matheson, the Honorable Carolyn B. McHugh, the Honorable Allison H. Eid, and the Honorable Veronica S. Rossman did not participate in the consideration of Plaintiffs-Appellees' petition for rehearing en banc.

*John Fitisemanu, et al. v. United States of America, et al.*
Nos. 20-4017, 20-4019
**BACHARACH**, J., dissenting from the denial of en banc consideration

This case involves a discrete question: Does the Fourteenth Amendment's Citizenship Clause extend to individuals born in American Samoa? The individual plaintiffs—John Fitisemanu, Pale Tuli, and Rosavita Tuli—say *yes*: having been born in American Samoa, they allege birth "in the United States." U.S. Const. amend. XIV, § 1, cl. 1. The defendants—the United States, the American Samoa government, and the Honorable Aumua Amata—say *no*: they contend that unincorporated territories, including American Samoa, are not "in the United States."

A divided panel reversed summary judgment for the plaintiffs without determining the meaning of the constitutional text. Instead, the panel majority characterizes the constitutional text as ambiguous and rests on other grounds. One panel member (Judge Lucero) relies on the Insular Cases. Another panel member (Chief Judge Tymkovich) relies on a congressional practice that didn't begin until roughly a half-century after ratification of the Citizenship Clause.

Both approaches skirt our obligation to determine the meaning of the constitutional language. Because of the exceptional importance of this obligation and the issue of citizenship, we should have granted the plaintiffs' request for en banc consideration.

**1.      The issue is exceptionally important.**

We rarely convene en banc, but do so for questions of exceptional importance. 10th Cir. R. 35.1(A). In my view, the issue of citizenship for individuals born in American Samoa is exceptionally important.

The right of citizenship is precious to every U.S. citizen, something that the Fourteenth Amendment has removed from Congress's control. *See Afroyim v. Rusk*, 387 U.S. 253, 263 (1967) (stating that the framers of the Fourteenth Amendment "wanted to put citizenship beyond the power of any governmental unit to destroy"). That precious right is being denied to those born in American Samoa.

Although American Samoa ceded itself to the United States over a century ago, individuals born there have never obtained recognition as U.S. citizens. So if American Samoans are not naturalized, they cannot enjoy any of the plethora of rights that we enjoy as citizens. For over 120 years, we've denied these rights to American Samoans.

This issue also affects individuals born in the United States' other territories, including natives of Puerto Rico born in the last 120+ years, natives of Guam born in the last 70+ years, natives of the Northern Mariana Islands born in the last 40+ years, and natives of the Virgin Islands born in the last 100+ years. Unlike American Samoans, individuals born in these territories enjoy statutory citizenship; but they are treated as citizens only at the whim of Congress.

2

Few judicial tasks are more important than deciding who are U.S. citizens and who aren't. Our method of answering this question is just as important. To answer that question, we must unravel the meaning of the Citizenship Clause. Unlike many constitutional provisions, the Citizenship Clause expressly defines its geographic scope, stating that the right (citizenship) extends to everyone born "in the United States." So the parties and the panel agree that our threshold task is to define the scope of the geographic term "in the United States."

2.    **U.S. territories, such as American Samoa, lie "in the United States."**

To interpret this term, we have various interpretive tools at our disposal. The Citizenship Clause was ratified in 1868, so different jurists might consider contemporary

- judicial opinions,

- censuses,

- maps,

- dictionary definitions,

- legislative statements, and

- statutes.

*All* of these sources treated territories like American Samoa as lying "in the United States."

3

**a. Contemporary judicial opinions included the territories as part of the United States.**

To discern what ordinary Americans meant in 1866 to 1868 by the phrase "in the United States," we can consider contemporary judicial opinions. In the nineteenth century, "[c]ourts . . . commonly referred to U.S. territories as 'in' the United States." Michael D. Ramsey, *Originalism and Birthright Citizenship*, 109 Geo. L.J. 405, 426 (2020).

For example, in the early part of the century, the Supreme Court observed that

- "the United States" "is the name given to our great republic, which is composed of States and territories" and

- "the territory west of the Missouri [was] not less within the United States . . . than Maryland or Pennsylvania."

*Loughborough v. Blake*, 18 U.S. (5 Wheat.) 317, 319 (1820) (Marshall, C.J.).

Justice Story, riding Circuit, also explained that "[a] citizen of one of our territories is a citizen of the United States." *Picquet v. Swan*, 19 F. Cas. 609, 616 (C.C.D. Mass. 1828).

About 25 years later, the Court considered whether U.S. tariffs had been properly applied to products coming from outside the United States into the Territory of California. *Cross v. Harrison*, 57 U.S. (16 How.) 164, 181, 197 (1853). The Court answered *yes*, considering the Territory of California as "part of the United States." *Id.* at 197–98.

4

And in 1867, the Supreme Court observed that U.S. citizens included inhabitants of "the most remote States or territories." *Crandall v. State of Nevada*, 73 U.S. (6 Wall.) 35, 48–49 (1867) (quoting *Smith v. Turner* (*The Passenger Cases*), 48 U.S. (7 How.) 283, 492 (1849) (Taney, C.J., dissenting)).[1]

The American Samoan government points out that in *Fleming v. Page*, the Supreme Court held that Tampico (a port in Tamaulipas, Mexico) was not "in the United States" even though the U.S. military had occupied the port during the Mexican-American War. 50 U.S. 603, 614–16 (1850). But the Court clarified that even though other nations had to regard Tampico as U.S. territory, the port was not "territory included in our established boundaries" without a formal cession or annexation. *Id.* So the opinion doesn't address whether territories of the United States are "in the United States."

---

[1]    A leading attorney of the era, William Rawle, also observed that "every person born within the United States, its territories or districts, whether the parents are citizens or aliens, is a natural born citizen in the sense of the Constitution, and entitled to all the rights and privileges appertaining to that capacity." William Rawle, *A View of the Constitution of the United States of America* 86 (Philip H. Nicklin, 2d ed. 1829); *see* Stewart Jay, *The Status of the Law of Nations in Early American Law*, 42 Vand. L. Rev. 819, 826–27 (1989) (stating that Mr. Rawle was a U.S. Attorney and a leading attorney of the period).

5

### b.     Contemporary dictionaries, maps, atlases, and censuses included the territories as part of the United States.

We may also consider contemporary dictionaries, maps, atlases, and censuses. *See NLRB v. Noel Canning*, 573 U.S. 513, 527 (2014) (looking to contemporary dictionaries to interpret the Recess Appointments Clause); *New Jersey v. New York*, 523 U.S. 767, 797–803, 810 (1998) (looking to historical censuses and maps to determine which parts of Ellis Island lay in New York and New Jersey).

Like judicial opinions, dictionaries of the era regarded territories as land "in the United States." For example, the 1867 edition of *Webster's Dictionary* defined "Territory" as "2. A distant tract of land belonging to a prince or state. 3. In the United States, a portion of the country not yet admitted as a State into the Union, but organized with a separate legislature, a governor." William G. Webster & William A. Wheeler, *A Dictionary of the English Language* 434 (academic ed. 1867).

The next year, Judge John Bouvier's legal dictionary defined "Territory" even more broadly as "[a] portion of the country subject to and belonging to the United States which is not within the boundary of any of the States." II John Bouvier, *A Law Dictionary, Adapted to the Constitution and Laws of the United States of America, and of the Several States of the American Union* 587 (George W. Childs 12th ed. rev. 1868). So contemporary dictionaries defined territories as "in the United States."

6

This understanding is also apparent in contemporary maps of the United States. For example, the 1857 map of the United States included the territories of Washington, Oregon, Nebraska, Nevada, Utah, New Mexico, Arizona, Dakota, and Indian Territory (later Oklahoma):



Henry D. Rogers, W. & A.K. Johnston Ltd. & Edward Stanford Ltd., *General Map of the United States, Showing the Area and Extent of the Free & Slave-Holding States & the Territories of the Union: also the Boundary of the Seceding States* (1857), https://www.loc.gov/resource/

7

g3701e.cw1020000/ (last visited on Dec. 1, 2021) (on file at the Library of Congress).

Like contemporary maps, the censuses of the era showed territories as part of the United States. For example, the 1854 census stated that "[t]he United States consist at the present time (1st July 1854,) of thirty-one independent States and nine Territories . . . ." J.D.B. De Bow, Superintendent of the U.S. Census, *Statistical View of the United States* 35 (A.O.P. Nicholson 1854).

In 1870, the U.S. Statistical Atlas again listed both states and territories as the region constituting the United States:



Francis A. Walker, *Statistical Atlas of the United States Based on the Results of the Ninth Census 1870* (1874) (on file at the Library of

Congress). The atlas thus derived the area and population of "the United States" by including the territories as well as the states.



Area and population of "The States"

Area and population of "The Territories"

Area and population of "The United States," the sum of the States and the Territories

*Id.*

Together, contemporary judicial opinions, dictionaries, maps, atlases, and censuses provide convincing proof that nineteenth-century Americans considered the U.S. territories to lie "in the United States." Given the uniformity of that proof, I see nothing uncertain or ambiguous about the

9

intent to apply the Citizenship Clause to the territories. So when the United States acquired American Samoa as a territory, everyone born in the territory became a U.S. citizen. We thus need not stray beyond the text of the Citizenship Clause to determine the plaintiffs' citizenship.

Despite the uniformity of the historical evidence, the panel majority points solely to a single map published in 1830:



*Fitisemanu v. United States*, 1 F.4th 862, 876 n.18 (10th Cir. 2021) (majority opinion) (citing Mary Van Schaack, *A Map of the United States and Part of Louisiana* (c. 1830), www.loc.gov/resource/g3700.ct000876 (last visited Dec. 1, 2021) (on file with the Library of Congress)). Based

10

on the title of this map (*A Map of the United States and Part of Louisiana*), the majority implies that the mapmaker, Ms. Van Schaack, wouldn't intentionally be redundant by specifying in the title that the map included Louisiana if the territory would otherwise have been considered part of the United States.

This reasoning incorrectly assumes that Louisiana was a territory when the map was drawn. Louisiana was a state, not a territory. As a state, Louisiana was obviously part of the United States. Irrespective of Ms. Schaack's reasons for the title, however, she did include three U.S. territories in her map of the United States: the Territories of Mississippi (1798), Indiana (1800), and Illinois (1809).[2] So her map supplies further historical proof that nineteenth-century Americans considered the territories part of the United States.

The panel majority explains away the judicial opinions, dictionaries, maps, atlases, and censuses, stating that they were referring to *incorporated* territories rather than *unincorporated* territories like American Samoa. *Fitisemanu v. United States*, 1 F.4th 862, 876 (10th Cir. 2021) (majority opinion). This explanation is mistaken. In fact, the term "unincorporated territory" hadn't even existed in 1868; the term didn't

---

[2]     By the time of this map, Mississippi, Indiana, and Illinois had also become states. Despite statehood in each of these regions, the map depicts them as territories.

surface until 33 years later (when Justice White concurred in *Downes v. Bidwell*, 182 U.S. 244, 311–14 (1901)). So the term cannot help us interpret the Citizenship Clause. But contemporary treatment of similar territories confirms that nineteenth-century Americans considered all territories to be part of the United States—even if they weren't destined for statehood.

Though the term "unincorporated territory" hadn't yet surfaced in 1868, the United States had fresh experience with territories that were not considered destined for statehood. Indeed, only a year before ratification of the Citizenship Clause, the United States had acquired the Territory of Alaska from Russia. The acquisition came in a treaty that said nothing about eventual statehood for Alaska. *See* Cession of Alaska, Russ.-U.S., T.S. No. 301, Mar. 30, 1867.[3]

Though no one in 1868 would have considered the new Territory of Alaska as *incorporated* or otherwise destined for statehood, Alaska was

---

[3]    Though nothing was said about statehood for Alaska, the treaty did ensure Alaskans "the enjoyment of all of the rights, advantages, and immunities of citizens of the United States." Cession of Alaska, Russ.-U.S., T.S. No. 301, art. III, Mar. 30, 1867. Similar language governed the United States' acquisition of a large part of American Samoa: "[T]here [would] be no discrimination in the suffrages and political privileges between the present residents of said Islands and citizens of the United States dwelling therein." Instrument of Cession, Chiefs of Manu'a-U.S., July 14, 1904 (Ta'u, Olosega, Ofu, and Rose Islands), https://history.state.gov/historicaldocuments/frus1929v01/d855 (last visited Dec. 1, 2021).

12

uniformly considered part of the United States. For example, John Bouvier's legal dictionary (published 15 years after ratification of the Citizenship Clause) defined Alaska as part of the United States. II John Bouvier, *A Law Dictionary, Adapted to the Constitution and Laws of the United States of America, and of the Several States of the American Union* 765 (J.P. Lippincott and Co., 15th ed. rev. 1883).

Like Bouvier's legal dictionary, maps of the era treated Alaska as part of the United States. Indeed, in the year that the Citizenship Clause was ratified, the map of the United States included the newly acquired Territory of Alaska:



13

H. H. Lloyd & Co., *The Washington map of the United States* (1868),

https://www.loc.gov/resource/g3700.ct002969/ (last visited Dec. 1, 2021)

(on file at the Library of Congress).

Atlases of the era did the same. Six years after ratification of the

Citizenship Clause, the U.S. Statistical Atlas included the Territory of

Alaska though statehood was still not expected:



Francis A. Walker, *Statistical Atlas of the United States Based on the*

*Results of the Ninth Census 1870* (1874) (on file at the Library of

Congress). The atlas thus derived the area and population of "the United

14

States" by including data from the newly acquired Territory of Alaska without mentioning the prospect of statehood.

.



*Id.* The census of 1870 explained that it too included the population of Alaska in order "to present the statistics of the true population of the country formerly complete." Francis A. Walker, *Report of the Superintendent of the Ninth Census*, *in* 1 *The Statistics of the Population of the United States* xvi (1870).

But Alaska isn't the only example of a territory uniformly considered part of the United States in 1868 even though no one there expected statehood. Consider the Indian Territory, which appears in this map of the

United States in 1856 (roughly a decade before ratification of the

Citizenship Clause):



J.H. Colton & Co., The United States of America (1856),

https://mapofus.org/_maps/atlas/1856-US.html (last visited Dec. 1, 2021).

The Indian Territory reappeared the next year in another map of the United

States:



Henry D. Rogers, W. & A.K. Johnston Ltd. & Edward Stanford Ltd.,

*General Map of the United States, Showing the Area and Extent of the Free*

*& Slave-Holding States & the Territories of the Union: also the Boundary*

*of the Seceding States* (1857),

https://www.loc.gov/resource/g3701e.cw1020000/ (last visited Dec. 1,

2021) (on file at the Library of Congress).

 The Indian Territory continued to appear in maps of the United

States. For example, in the year that the Citizenship Clause was ratified,

this map showed the Indian Territory as within the confines of the United

States:

17



G.W. & C.B. Colton & Co., United States (1868),

https://www.loc.gov/item/98685156/ (last visited Dec. 1, 2021).

Similarly, the 1874 U.S. Statistical Atlas included the Indian

Territory when listing the territories and states making up "the United

States":

18

AREA, POPULATION, AND AVERAGE DENSITY OF SETTLEMENT OF EACH STATE OR TERRITORY AT EACH CENSUS.

THE UNITED STATES

THE TERRITORIES

Indian Country (unorg. territory)

Maps and atlases depicted the Indian Territory within the United States[4] even though no one would have expected statehood for the Indians residing in this territory. *See Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 557 (1832) ("The treaties and laws of the United States contemplate the Indian territory as completely separated from that of the states . . . .").

---

[4]     Many other contemporary maps of the United States included the Indian Territory. *See, e.g.*, S. Augustus Mitchell et al., *Mitchell's School Atlas* (1839), https://www.loc.gov/resource/g3200m.gct00054/?sp=6 (last visited Dec. 1, 2021); Henry A. Burr, *Disturnell's New Map of the United States and Canada: Showing All the Canals, Rail Roads, Telegraph Lines & Principal Stage Routes* (1850), https://www.loc.gov/item/2012593337/ (last visited Dec. 1, 2021).

19

The panel majority says nothing about how Americans of 1868 had viewed the territories. Regardless of whether statehood was expected, Americans regarded the U.S. territories as within the United States.

### c.    Contemporary legislative statements and statutes included the territories as part of the United States.

Aside from judicial opinions, maps, atlases, censuses, and dictionary definitions, we have the contemporary statements by legislators discussing the meaning of the Citizenship Clause. The legislators' floor statements uniformly regarded Indian tribes as "in the United States" even though they did not reside in states or regions destined for statehood. *See Fitisemanu v. United* States, 1 F.4th 862, 890–91 (10th Cir. 2021) (Bacharach, J., dissenting).

In his concurrence, Chief Judge Tymkovich dismisses these statements as "off-the-cuff statements" by individual legislators. *Id.* at 882 (Tymkovich, C.J., concurring). But the Supreme Court itself relied on these floor statements, calling them "valuable . . . contemporaneous opinions of jurists and statesmen upon the legal meaning" of the Citizenship Clause. *United States v. Wong Kim Ark*, 169 U.S. 649, 669 (1898).

Nineteenth century statutes confirm that Congress understood territories to be part of the United States. With creation of the Oklahoma Territory from the Indian Territory (which was never destined for statehood), Congress referred to the Indian Territory as a "portion of the

20

United States": "[A]ll that *portion of the United States* now known as the Indian Territory, except so much of the same as is actually occupied by the five civilized tribes, and the Indian tribes within the Quapaw Indian Agency, and except the unoccupied part of the Cherokee outlet, together with that portion of the United States known as the Public Land Strip, is hereby erected into a temporary government by the name of the Territory of Oklahoma." Oklahoma Organic Act, Pub. L. No. 51-182, 26 Stat. 81, 81 (1890) (emphasis added).

* * *

In my view, the text of the Citizenship Clause, along with *all* of the historical evidence, shows that the Citizenship Clause extended to everyone born in the U.S. territories—including individuals born in territories like Alaska and the Indian Territory, where statehood was not expected.

3.    **We must decide what it means to be born "in the United States."**

The panel majority disregards the vast historical evidence on what it meant in 1868 to be born "in the United States." Having characterized the Citizenship Clause as ambiguous, Judge Lucero relies on the Insular Cases, which considered the impracticability and anomalousness of applying constitutional provisions to unincorporated territories. *Fitisemanu v. United States*, 1 F.4th 862, 877 (10th Cir. 2021) (majority opinion). But

21

this test doesn't apply when the constitutional provision defines its own geographic scope.

The impracticability and anomalousness of the issue does not bear on the meaning of the constitutional provision itself. Suppose that the Citizenship Clause had stated that citizenship extends to everyone "born in a U.S. state or U.S. territory." Would we still define the scope of the Citizenship Clause based on impracticability and anomalousness? I doubt that any of us would because the clause itself would define its geographic scope. *See Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero*, 426 U.S. 572, 589 n.21 (1976) (interpreting one of the Insular Cases to provide that the Constitution does not extend to the Philippines "except insofar as required by [the Constitution's] terms"). The same is true here, for the Insular Cases provide no guidance when the Constitution creates a distinct right and defines its own geographic scope.

The Citizenship Clause performs this double duty, creating a distinct right (citizenship) and defining its own geographic scope ("in the United States"). *See Fitisemanu v. United* States, 1 F.4th 862, 875 (10th Cir. 2021) (majority opinion) (stating that "[t]he Citizenship Clause's applicability hinges [in part] on a geographic scope clause—'in the United States'"). This guarantee is self-executing: birthright citizenship "is established by the mere fact of birth under the circumstances defined in the constitution." *United States v. Wong Kim Ark*, 169 U.S. 649, 703 (1898).

22

For over 120 years, we've interpreted this guarantee to elevate birthright citizenship beyond the reach of the political process. *Id.* at 704 (stating that laws and treaties "cannot exclude Chinese persons born in this country from the operation of the broad and clear words of the constitution: 'All persons born in the United States, and subject to the jurisdiction thereof, are citizens of the United States'"). The Citizenship Clause "settle[d] the great question of citizenship and remove[d] all doubt as to what persons are or are not citizens of the United States." *Afroyim v. Rusk*, 387 U.S. 253, 263 (1967) (quoting Cong. Globe, 39th Cong., 1st Sess., 2890 (1866) (statement of Sen. Jacob M. Howard)). So Congress lacks authority "to restrict the effect of birth [in the United States], declared by the constitution to constitute a sufficient and complete right to citizenship." *Wong Kim Ark*, 169 U.S. at 703.

Despite this intent to remove citizenship from congressional control, Chief Judge Tymkovich relies on the "settled understanding and practice over the past century . . . that Congress has the authority to decide the citizenship status of unincorporated territorial inhabitants." *Fitisemanu*, 1 F.4th at 883 (Tymkovich, C.J., concurring). In my view, there is no such settled understanding. The Supreme Court has yet to decide whether the Citizenship Clause applies to the territories. In the face of this silence, Congress has stepped in and granted citizenship to some residents of the territories. But this acquiescence says little, if anything, about Congress's

23

views on the scope of the Clause. Only one branch—the executive, through the State Department—has spoken definitively on this issue. *See Fitisemanu v. United States*, 426 F. Supp. 3d 1155, 1159 (D. Utah 2019) (noting the undisputed fact that "[i]t is the State Department's policy that [the Citizenship Clause] does not apply to persons born in American Samoa") (citation omitted). But even if there were a settled practice and understanding over the past century, a practice that began a half century after the ratification of the Fourteenth Amendment would shed little light on the meaning of the Citizenship Clause in 1868.

Rather than rely primarily on congressional practice, Judge Lucero would stretch the Insular Cases by applying them in a new setting. The Insular Cases didn't address whether the Citizenship Clause—or any other portion of the Fourteenth Amendment—applied in unincorporated territories. And the Supreme Court has never applied the "impracticable and anomalousness test" to determine the applicability of a constitutional right that defines its own geographic scope. *See Reid v. Covert*, 354 U.S. 1, 14 (1957) (plurality opinion) (stating that "neither the [Insular Cases] nor their reasoning should be given any further expansion"). By its terms, the Citizenship Clause applies to everyone born in the United States, and "we have no authority . . . to read exceptions into [the Constitution] which are not there." *Id.*

24

As the federal government notes, some other circuits have rejected application of the Citizenship Clause to unincorporated territories. But these opinions haven't grappled with the textual or historical evidence on the meaning of the Citizenship Clause.

An example is *Tuaua v. United States*—the only other circuit case to consider whether the Citizenship Clause applies to American Samoa. 788 F.3d 300 (D.C. Cir. 2015). There the D.C. Circuit held that the scope of the Citizenship Clause was ambiguous, reasoning that the phrase "in the United States" does not unambiguously

- *exclude* the territories (unlike the Apportionment Clause's reference to "the several States") or

- *include* them (unlike the Thirteenth Amendment's prohibition on slavery, which applies "within the United States, or any place subject to their jurisdiction").

*Id.* at 302–04. But the court stopped there without considering any historical evidence of the nineteenth-century meaning of "in the United States." *See id*.

The other four circuit cases addressed application of the Citizenship Clause to the Philippines, and each opinion relied on *Downes v. Bidwell*'s consideration of the Tax Uniformity Clause without considering the historical meaning of "in the United States." *Rabang v. I.N.S.*, 35 F.3d 1449 (9th Cir. 1994); *Valmonte v. I.N.S.*, 136 F.3d 914 (2d Cir. 1998);

25

*Lacap v. I.N.S.*, 138 F.3d 518 (3d Cir. 1998) (per curiam); *Nolos v. Holder*, 611 F.3d 279 (5th Cir. 2010) (per curiam).

In the first of these cases, the Ninth Circuit held that unincorporated territories are not "in the United States" for purposes of the Citizenship Clause, relying on *Downes*'s interpretation of the Tax Uniformity Clause. *Rabang v. I.N.S.*, 35 F.3d 1449, 1452–53 (9th Cir. 1994). But important differences exist between the Tax Uniformity Clause and the Citizenship Clause: they were ratified eighty years apart; and the Tax Uniformity Clause protects states, while the Citizenship Clause protects individuals. The court disregarded these differences without considering the nineteenth-century meaning of "in the United States." *See id.* at 1455 (Pregerson, J., dissenting).

Nor did the other three circuit court opinions, which simply followed the reasoning in *Rabang*. *Valmonte v. I.N.S.*, 136 F.3d 914 (2d Cir. 1998); *Lacap v. I.N.S.*, 138 F.3d 518 (3d Cir. 1998) (per curiam); *Nolos v. Holder*, 611 F.3d 279 (5th Cir. 2010) (per curiam).

None of these courts

- focused on the textual meaning of the phrase "in the United States" or

- addressed the extensive historical evidence that territories were considered "in the United States" when the Citizenship Clause was ratified.

26

So none of the other circuit court opinions can shed any meaningful light on the textual or historical meaning of the Citizenship Clause.

**4.    Conclusion**

We bear an obligation to interpret the geographic scope of the Citizenship Clause based on the text and its historical context. When we do, there is only one answer: The Territory of American Samoa lies within the United States.

Despite the unambiguous, uniform historical meaning of the term "in the United States," our country has denied constitutional citizenship for over a century to virtually everyone born in U.S. territories like American Samoa. The right of constitutional citizenship for these fellow Americans is deserving of en banc consideration. I thus respectfully dissent from the denial of en banc consideration.